[No. 13989. Department Two. July 25, 1917.]

## THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH McCASKEY, *Appellant*.[1]

CRIMINAL LAW—CONTINUANCE — SURPRISE — INDORSEMENT OF NEW WITNESSES. Under Rem. Code, § 2050, requiring the prosecuting attorney, at the time of filing an information, to indorse the names of witnesses known to him, it is an abuse of discretion to refuse a continuance, needed for the investigation of witnesses, where the prosecuting attorney, one working day before the trial, was by *ex parte order*, permitted to indorse the names of nine additional witnesses known to him at the time of filing the information, and which he had refused to disclose and had apparently concealed until the last possible moment, although they were worthy subjects of investigation and apparently unworthy of belief.

INTOXICATING LIQUORS—PROSECUTION—ISSUES AND PROOF. Upon a prosecution of a druggist for keeping intoxicating liquors named in the information, intended for unlawful sale, it is error to admit evidence of the sale of alcohol, not specified in the information, as a circumstance bearing on the guilt of the accused; especially where the sale of alcohol was made for mechanical purposes in strict compliance with the law.

SAME—INFORMATION—TIME—MATERIALITY. Upon a prosecution of a druggist for keeping intoxicating liquors intended for unlawful sale, on or about the 24th day of March, evidence of the presence of liquors on the premises four days later is admissible, inasmuch as it is provided by statute that the precise time is not a material allegation.

SAME—OFFENSES—STATUTES—SALE. The fact that a person procures alcohol of a druggist by making a false statement, in violation of the statute, does not make the sale, in strict compliance with the statute, unlawful.

INTOXICATING LIQUORS—OFFENSES—INTENT — EVIDENCE — ADMISSIBILITY. Upon the prosecution of a druggist for keeping intoxicating liquors intended for unlawful sale, the quantity and kind of liquor kept on hand by the defendant is material, but not conclusive, to show that he had in possession quantities and kinds in excess of his apparent needs.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered May 25, 1916, upon a trial and conviction of violating the prohibition law. Reversed.

[1]Reported in 166 Pac. 1163.

*Gordon & Easterday* and *Wesley Lloyd,* for appellant.

*Fred G. Remann, Geo. M. Thompson,* and *J. W. Selden,* for respondent.

FULLERTON, J.—The appellant, McCaskey, is the proprietor of a drug store situated at Wilkeson, Pierce county, Washington. On March 28, 1916, the prosecuting attorney of Pierce county filed an information against him, charging that, on or about the 24th day of March, 1916, the appellant kept in his drug store "intoxicating liquor, to wit, whiskey, brandy, gin, rum and wine," with intent to unlawfully sell, barter, and exchange the same contrary to the statutes. The appellant was shortly thereafter arrested on a warrant issued on the information, and on April 4, 1916, entered a plea of not guilty thereto. The cause was set for trial for Monday, May 8, 1916. At the time the information was filed, and at the time the plea was entered, the information had indorsed thereon the name of but a single witness. This name subsequently proved to be intended for that of a girl, sixteen years of age, although it was indorsed in the form of a single initial followed by a surname, without anything to indicate the age or sex of the individual intended to be represented thereby. On Friday, May 5, 1916, the Friday preceding the Monday on which the case was set to be tried, the prosecuting attorney procured an *ex parte* order of the court permitting him to indorse on the information, and thereupon did indorse thereon, the names of nine additional witnesses. A copy of the order containing the names of the witnesses was served on the attorneys for the appellant at about three o'clock in the afternoon of the same day.

On Monday, when the case was called for trial, the appellant moved the court for a continuance of at least two days to enable him to investigate the characters of the witnesses whose names had been indorsed on the preceding Friday, supporting the motion by the affidavit of one of his attorneys to the effect that neither the appellant nor his attorneys had

had an opportunity to inquire into the character and standing of such witnesses, or to learn "what manner of men and women they" were; further averring that the prosecuting attorney had, prior to the time their names were indorsed on the information, refused to give their names, and had at all times refused to furnish them with the addresses of the witnesses. The motion was opposed by the prosecuting attorney, who filed an affidavit to the effect that he had, at the request of one of the appellant's attorneys, furnished him with the names of witnesses at a time prior to the indorsement of their names on the information, in so far as they were then known to the prosecution. The matter was made the subject of further inquiry in which oral testimony was taken. This it is unnecessary to set forth at length. While it developed a misunderstanding between counsel, it seems to us to support the appellant's contention that he was not informed, prior to the time the names of the witnesses were indorsed, whom the prosecution expected to call in support of the information. The inquiry developed the fact, also, that the witnesses intended to be called were, with the exception of two, known to the prosecuting attorney at the time the information was filed. On this subject, the prosecuting attorney testified (we quote from the statement of facts):

"I have known at all times since the filing of this information what witnesses were to be called upon the part of the state, but I did not, until a few days ago, know the names of the witnesses Peretti and Currington. I employed them through the Thiel Detective Agency in Seattle, and suppose I could have obtained their names from that agency. I had my own reasons for not indorsing them; reasons I deem sufficient."

The court overruled the motion, and proceeded with the trial, which resulted in a verdict of guilty. From the judgment and sentence pronounced upon the verdict, this appeal is prosecuted.

The error first assigned is the refusal of the court to grant the motion for a continuance. It seems to us that, in fairness

to the defendant, this motion should have been granted. The statute (Rem. Code, § 2050) provides in express terms that the prosecuting attorney, at the time he files an information against an accused person, shall indorse thereon the names of the witnesses known to him at the time of filing the same, and while we have held that the time when the names of witnesses shall be indorsed is largely a matter of discretion and that, in the absence of a showing of an abuse of such discretion or that some substantial injury has resulted to the defendant, a conviction will not be reversed for a disobedience of the rule of the statute (*State v. Le Pitre*, 54 Wash. 166, 103 Pac. 27), it has never been held that the procedure was an absolute right of the prosecution. The rule of the statute has a purpose. This purpose is to give the defendant an opportunity to inquire into the habits, character, and standing of the witnesses by whom the accusation against him is to be proven, and to show, if he can, that these are such as to render the witnesses in the eyes of their neighbors and acquaintances unworthy of belief. To prevent miscarriages of justice, great liberality has been exercised by the courts in allowing the names of witnesses to be indorsed on an information, but this liberality has never been, and should not be, carried to the extent of working an injustice to the defendant. One cannot read this record without being convinced that there was a studied attempt to keep the names of these witnesses from the defendant until the latest possible moment. There intervened but one working day between the time their names were indorsed on the information and the time the defendant was required to confront them at his trial. They were considerable in number and seemingly the very short time the defendant requested to inquire into their characters was not unreasonable. We think it an abuse of discretion to refuse it.

The subsequent testimony, moreover, showed that certain of these witnesses were worthy subjects of investigation. Three of them were mature women and another, as we have

said, was a young girl.   Two of the women, Mrs. Swanson
and Mrs. Lavalle, went from Tacoma to the town of Wilkeson,
where the business of the defendant was conducted, on the
evening of March 21, 1916, arriving there at about 7:30 p.
m.   They entered the appellant's place of business shortly .
after their arrival and sought to buy intoxicating liquor.
This was refused them; whereupon they asked for alcohol,
making the admittedly false statement that they desired it
for an alcohol stove.   The clerk whom they approached told
them that he had wood alcohol which could be used for that
purpose, and proffered them that.   They informed him that
they did not desire that kind because of its disagreeable odor.
He then sold them a pint of grain alcohol for which they
signed a regular register, again making the false statement
that it was intended for mechanical purposes.   On Friday,
March 24, 1916, Mrs. Swanson again went to the town of
Wilkeson, taking with her a Mrs. Bessie Hunt and the young
girl.   The state's version of this trip may best be told by
the witnesses themselves.   Mrs. Hunt testified:

"My name is Bessie Hunt.   Mrs. Swanson, ——, a girl of
sixteen years of age, and I went to Wilkeson on Friday, the
24th day of March.   We reached Wilkeson at about 8:30
p. m.   We went to Mr. McCaskey's drug store.   I was em-
ployed by Mrs. Swanson to go with her.   She did not tell me
what she wanted me to do, but told me to come with her to
Wilkeson.   At the drug store Mrs. Swanson bought a bottle
of 'Monogram' whiskey.   I asked the clerk if I could buy gin
and he said, 'Yes.'   I bought two bottles of gin from him
and paid $1 for them.   The druggist's wife was in the store.
She said her husband, Mr. McCaskey, was upstairs.   Mrs.
Swanson asked the price of champagne.   The clerk told her
it was $5.   He walked behind the prescription case and
brought out a bottle of wine.   Mrs. Swanson asked him the
price and he said $2.   It was Virginia Dare.   The wine was
setting out on the shelves so everybody could see it.   Mr.
McCaskey was standing beside the clerk when the purchase
was made.   Mrs. Swanson handed the money to the clerk
rather than laying it on the counter.   Myself, Mrs. Swanson
and —— —— [the young girl] ate dinner the night of the 24th

at the city restaurant in Wilkeson. We had a box in the rear of the restaurant. Mrs. Swanson ordered beer and a man went out and brought in several bottles. While we were eating dinner a number of men conversed with us. One of them tried to kiss the —— girl. Some of them tried to take liberties with us."

The young girl testified:

"My name is —— ——. I am sixteen years of age. I know Mrs. Swanson and have known her for about a year. She came down to the house and asked my mother if she could take me on a trip and my mother consented and on Friday, March 24, Mrs. Swanson, Mrs. Hunt and I went to Wilkeson. We arrived there about 8 o'clock. We went to McCaskey's drug store. Mrs. Swanson asked the druggist's clerk, Mr. Battiste, for some whiskey. He sold her a bottle of 'Monogram' whiskey. There were some men in there playing the phonograph. Mrs. Hunt then bought two and one-half pints of gin, for which she paid the clerk $1. Mrs. Swanson paid the druggist $2.50 for the bottle of whiskey. The clerk got the bottle from the shelf at the back of the store. About 11 o'clock that same evening we went back a second time and Mrs. Swanson purchased a bottle of whiskey from Mr. McCaskey. I was not employed by any one. During dinner at the City restaurant some of the men got 'funny' with Mrs. Hunt and tried to take liberties with me. I didn't drink any beer there."

Witnesses on the part of the appellant, reputable in so far as the record shows, who saw them in the restaurant mentioned and at the time they visited the appellant's place of business, testified that the women as well as the young girl were intoxicated, and that their appearance was that of lewd women. There was a denial by all of the persons involved and by uninterested witnesses that any intoxicating liquor was procured by the women at the appellant's place of business on either of the occasions to which they testified.

Comment would seem to be unnecessary. Manifestly enough is shown to make it not at all improbable that, if the appellant had been given an opportunity to fully investigate the characters of these witnesses, he could have brought such evidence before the jury as to convince them that they were

not of such a character as to be worthy of belief. It may not be improper to remark, also, that while zeal in the prosecution of offenders against the laws is always commendable, there are bounds beyond which it should not pass. The impropriety, if not crime, of sending a girl sixteen years of age on a mission of this sort ought to be apparent to the most zealous. If the example is followed, it will be strange indeed if the state is not called upon to enforce the laws against contributing to the delinquency of minors.

The court admitted the evidence relating to the sale of the alcohol, and in his charge to the jury told them that they might consider it as a circumstance bearing upon the guilt of the defendant. The defendant complains of this, we think justly. In the first place, the keeping of alcohol with intent to dispose of the same unlawfully was not within the issues. The prosecution specifically enumerated the intoxicating liquors which the defendant kept with criminal intent, and alcohol is not among the enumerated kinds. In the second place, no offense was committed by the defendant by the sale. It was made on his part in strict compliance with the law. The crime committed was by the state's witnesses. The law provides (Initiative Measure No. 3; Laws 1915, p. 14, § 21; Rem. Code, § 6262-21) that it shall be unlawful for any person to make a false statement to a physician, druggist or pharmacist for the purpose of obtaining intoxicating liquor or alcohol, and here confessedly these witnesses did obtain this alcohol by a false statement. Their crime cannot reflect back upon the druggist. Since he complied with the statute, he is innocent, however much the procurers of the alcohol may be guilty.

Since the judgment must be reversed and a new trial awarded for the errors indicated, it is necessary to notice certain other claims of error made by the defendant, as the questions will probably recur at the second trial. The information, it will be observed, fixes the time of the offense as "on or about the 24th day of March, 1916." The evidence

disclosed that on March 28, 1916, certain of the police offi-
cers of Pierce county made a search of the defendant's prem-
ises and seized a quantity of intoxicating liquors he then had
in stock. The officers were permitted to testify, over the ob-
jection of the defendant, as to the result of the search, and
the state was permitted to introduce the liquor seized in
evidence. The defendant contends that the admission of this
evidence was error, arguing, first, that presumptions do not
run backwards, and hence proof of possession of liquors
on the 28th day of March is not evidence that liquors were
possessed four days earlier; and second, that, since the law
gives to druggists the right to possess intoxicating liquors
without limitation as to kind or quantity, the druggist is
alone the judge as to the kind or quantity he shall possess,
and it is not a question that may be submitted to the varying
ideas of jurors. As to the first objection, it is a sufficient
answer to say that, in this state, it is provided by statute
that the precise time at which a crime was committed need
not be stated in an information, but it may be alleged to
have been committed at any time prior to the filing of the in-
formation and within the statute of limitations. Since time
is not a material allegation, proof is competent when within
the latitude of the statute, even though the information may
purport to fix the precise time and even though the proofs
may show that the actual time of the commission of the of-
fense was later than the time fixed. *State v. Williams*, 13
Wash. 335, 43 Pac. 15; *State v. Anderson*, 30 Wash. 14, 70
Pac. 104; *State v. Osborne*, 39 Wash. 548, 81 Pac. 1096.
There are, of course, exceptions to this rule. These, however,
have no pertinency here and need not be pointed out.

Noticing the second objection, we think it may safely be
conceded that a druggist is the sole judge of the kind and
quantity of intoxicating liquor the needs of his business may
require, and that he is not to be molested so long as he in-
tends to devote it to his legitimate trade. But this is hardly
the question here presented. It must be remembered that the

defendant is charged with keeping intoxicating liquors with the intent to unlawfully sell, barter, and exchange the same. It can readily be seen that to prove this fact the quantity and kind of intoxicating liquors the defendant kept on hand may be a material link in the chain of circumstances tending to show his guilt. If, for example, it were shown that an illegitimate traffic in liquors was being carried on in that vicinity, and that the defendant had made illicit individual sales, it would tend to support the charge that the defendant kept intoxicating liquors for illegitimate traffic to show that he had in his possession quantities and kinds in excess of his apparent needs. The fact alone, it may be conceded, would not be conclusive. A druggist, like any other merchant, may overstock in a particular commodity. What we hold is that it is a circumstance competent to be shown in connection with other facts, to sustain the issue which the jury are called upon to determine.

Because of the errors indicated, the judgment is reversed and a new trial awarded.

ELLIS, C. J., MOUNT, PARKER, and HOLCOMB, JJ., concur.