On petition for review filed January 4,* petition for review allowed and the decisions of the trial court and Court of Appeals affirmed March 21, 1989

# MATTHEW DENNIS THOMAS,
*Petitioner on Review,*

*v.*

# KEENEY,
*Respondent on Review.*

## (TC No. 86-C-11016; CA A41449; SC S35845)
771 P2d 249

---

\* Appeal from Circuit Court, Marion County, Honorable Richard D. Barber, Judge. 94 Or App 564, 767 P2d 120 (1988).

Rebecca L. Hillyer and Hillyer, Larson & Wright, Salem, for petitioner on review.

CARSON, J.

## CARSON, J.

In this habeas corpus proceeding under the Interstate Agreement on Detainers (IAD),[1] we must decide whether summary judgment was appropriate on petitioner's contention that he is not a "fugitive" from the State of Washington.

Petitioner is an inmate at the Oregon State Penitentiary. He is charged in Clark County, Washington, with Premeditated Murder in the First Degree and Felony Murder in the First Degree (RCW 9A.32.030(1)(a) and 9A.32.030(1)(c), respectively). The Clark County prosecuting attorney has filed a "Request for Temporary Custody," proposing to bring petitioner to trial in Washington and then return him to Oregon. Petitioner opposes his transfer.

Accordingly, petitioner began this proceeding. In petitioning for the writ of habeas corpus, he contended that he "was not present in the demanding State [Washington] when said crime [sic] was alleged to be committed." The trial court issued the writ and, after the return, respondent moved for summary judgment. The trial court granted respondent's motion and entered judgment. The Court of Appeals affirmed. *Thomas v. Keeney,* 94 Or App 564, 767 P2d 120 (1988). We affirm the decisions below.

Before turning to the question presented, we review the rights and scope of the hearing to which petitioner was entitled under the IAD.

## I. HEARING AND SCOPE OF HEARING

### A. Interstate Agreement on Detainers.

Subsection (a) of Article IV of the IAD sets forth procedures to follow in the event one state (the demanding state) requests the transfer to stand trial of a prisoner of another state (the sending state). ORS 135.775. After the appropriate officer of the demanding state lodges a detainer against the prisoner, the prisoner must be "made available [to the demanding state] * * * upon presentation of a written

---

[1] The Interstate Agreement on Detainers (IAD) is codified in Oregon as ORS 135.775. The IAD "is a congressionally sanctioned interstate compact the interpretation of which presents a question of federal law." *Cuyler v. Adams,* 449 US 433, 442, 101 S Ct 703, 66 L Ed 2d 641 (1981).

request for temporary custody or availability to the appropriate authorities of [the sending state]." *Id.* The court having jurisdiction of the indictment, information, or complaint naming the prisoner must approve, record, and transmit the request. *Id.* After receipt of the request, a 30-day period follows during which the governor of the sending state may disapprove the request for temporary custody. The governor may act upon his or her own motion or that of the prisoner. *Id.*

■     Subsection (d) of Article IV, on the other hand, sets forth the prisoner's rights to contest the legality of the proposed transfer. The subsection preserves whatever rights the prisoner has outside the IAD to contest a transfer. *Id.* The prisoner may not oppose transfer, however, "on the ground that the executive authority of the sending state has not affirmatively consented to or ordered such delivery." *Id.* The subsection was construed in *Cuyler v. Adams,* 449 US 433, 101 S Ct 703, 66 L Ed 2d 641 (1981), to entitle prisoners to pre-transfer hearings in states adopting the Uniform Criminal Extradition Act (UCEA). Both Oregon and Washington have adopted the UCEA.[2]

### B.  Uniform Criminal Extradition Act.

For our purposes, *Cuyler* details the relationship between the IAD and the UCEA.

In *Cuyler,* New Jersey sought, pursuant to the IAD, the extradition of a Pennsylvania prisoner. The prisoner contended that he was entitled to the pre-transfer hearing that he would have received had the transfer instead been sought under the UCEA. *Cuyler v. Adams, supra,* 449 US at 436-37. The U.S. Supreme Court concluded, as a matter of statutory construction, that Article IV(d) of the IAD incorporates the procedural protections of section 10 of the UCEA.[3] 449 US at 442-50. Section 10, in turn, accords a person whose extradition is sought the right to contest extradition in a habeas corpus proceeding. *See* ORS 133.787.

---

[2] The Uniform Criminal Extradition Act (UCEA) is codified in Oregon as ORS 133.743 to 133.833 and 133.839 to 133.855 and in Washington as RCW 10.88.200 to 10.88.930.

[3] Section 10 of the UCEA essentially is codified in Oregon as ORS 133.787.

In a footnote in *Cuyler,* the Court referred to *Michigan v. Doran,* 439 US 282, 99 S Ct 530, 58 L Ed 2d 521 (1978). In *Doran,* the Court concluded that a person whose extradition is sought may challenge "whether [he] is a fugitive."[4] *Cuyler v. Adams, supra,* 449 US at 443 n 11. By invoking the UCEA, therefore, a prisoner whose transfer is sought under Article IV of the IAD may challenge the transfer in a habeas corpus proceeding and thereby contest whether he or she is a "fugitive" from the demanding state.

Petitioner exercised his right to a pre-transfer habeas corpus proceeding. Before us, he only contests whether he is a "fugitive." We turn to that issue.

## II. PETITIONER'S "FUGITIVE" STATUS

■ ■  The process of determining whether petitioner is a fugitive is intended to be summary, with care taken "that the process of extradition be not so burdened as to make it practically valueless." *Matter of Strauss,* 197 US 324, 333, 25 S Ct 535, 49 L Ed 774 (1905). The process is not intended to determine guilt or innocence. *Ex Parte Montoya,* 170 Or 499, 503, 135 P2d 281 (1943); *see also* ORS 133.823.

In *Montoya,* this court defined "fugitive":

"* * * A fugitive from justice is a person who commits a crime within a state and withdraws himself from such jurisdiction without waiting to abide the consequences of such act.[5] * * * Obviously, if a person was not in the demanding state at a time when it would have been possible for him to commit the crime charged, he would not be a fugitive from justice." *Ex Parte Montoya, supra,* 170 Or at 502-03 (citations omitted); *see also State ex rel Zitek v. Clark,* 244 Or 111, 416 P2d 3 (1966).

---

[4] It appears that the habeas corpus court is limited to four issues:

(1)  Whether the extradition documents on their face are in order;

(2)  Whether the petitioner has been charged with a crime in the demanding state;

(3)  Whether the petitioner is the person named in the request for extradition; and

(4)  Whether the petitioner is a fugitive.

*Michigan v. Doran,* 439 US 282, 289, 99 S Ct 530, 58 L Ed 2d 521 (1978); *see also* ORS 133.763.

[5] ORS 133.763 requires the demanding state to show, *inter alia,* that the person accused "was present in the demanding state at the time of the commission of the alleged crime and thereafter fled from that state."

In *Montoya,* the petitioner resided in California until his departure for Oregon on May 29, 1942. Subsequently, he was charged in California with embezzlement committed " 'on or about the 2nd day of June, 1942.' " *Ex Parte Montoya, supra,* 170 Or at 501. The Governor of Oregon issued a warrant for the petitioner's extradition to California, stating that the petitioner was a "fugitive from justice." *Id.* at 503. In upholding extradition, this court concluded that the statement in the warrant about the petitioner's fugitive status was "presumed to be true" and that the burden lay on the petitioner to overcome this presumption by "conclusive evidence." *Id.*

At first glance, the decision in *Montoya* is hard to square with the facts. The petitioner left California on May 29, yet the crime allegedly was committed on or about June 2. How could the petitioner have been in California "at a time when it would have been possible for him to commit the crime charged" and thus to have been a fugitive? In answering this question, this court noted that "it was not necessary, under the law of California, to allege that [the crime of embezzlement] was committed on any precise date." *Id.* California law provided that " '[t]he precise time at which the offense was committed need not be stated in the indictment or information, but it may be alleged to have been committed at any time before the finding or filing thereof, except where the time is a material ingredient in the offense.' " *Id.* (quoting Cal Penal Code § 955 (1937)); *see also* ORS 135.717. Because the petitioner resided in California when it would have been possible for him to commit embezzlement, *i.e.,* before the time alleged in the complaint, he properly could be extradited. *Ex Parte Montoya, supra,* 170 Or at 503-04.

In this case, Washington has a statute similar to the California statute involved in *Montoya.* Under RCW 10.37.050(5), an indictment or information is sufficient if two things can be understood: (1) That "the crime was committed at some time previous to the finding of the indictment or filing of the information"; and (2) that the prosecution was commenced "within the time limited by law." Absent from RCW 10.37.050(5) is the statement of the California statute that "[t]he precise time at which the offense was committed need not be stated in the indictment or information." Until 1984, Washington had a statute, *former* RCW 10.37.180 (*repealed by* Washington Laws 1984, chapter 76, section 26), which did

contain such language. RCW 10.37.180 has been superseded by CrR 2.1; under CrR 1.1, however, the Superior Court Criminal Rules of Washington are "interpreted and supplemented in light of the common law and the decisional law of [Washington]."

The effect of CrR 1.1 and CrR 2.1 is to dispense with a requirement that an indictment or information state the precise time of the alleged offense. This is because the decisional law before the repeal of RCW 10.37.180 remains in effect. Under that law, the indictment or information only need allege that the crime was committed before the finding or filing of those documents and within the statute of limitations; the precise time at which the crime was committed need not be stated. *See State v. Odell,* 188 Wash 310, 314, 62 P2d 711 (1936); *State v. McCaskey,* 97 Wash 401, 408, 166 P 1163 (1917); *see also State v. Gottfreedson,* 24 Wash 398, 399, 64 P 523 (1901) (information not demurrable where it did not state the date on which the offense was committed).

Thus, because the precise time of his alleged offenses need not be stated in the charging instrument, petitioner's fugitive status turns on the question presented in *Montoya:* Whether the petitioner was present in the demanding state when he could have committed the crimes charged. As in *Montoya,* petitioner must have been present in the demanding state (Washington) before the finding or filing of the charging instrument. Petitioner need not have been present in Washington, however, on the precise date, if any, alleged in that instrument.

In deciding whether petitioner is a fugitive, we must keep in mind that this action comes before us upon respondent's motion for summary judgment.[6] Accordingly, the evidence must be viewed in the light most favorable to petitioner. Summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ORCP 47 C.

In his "Petition For Writ Of Habeas Corpus In

---

[6] No question has been raised regarding the propriety of summary judgment in an extradition habeas corpus proceeding, about which we express no opinion.

Extradition," petitioner introduced copies of a letter from the Clark County, Washington prosecutor requesting petitioner's extradition and a "Request for Temporary Custody." Both the prosecuting attorney and a judge of the Superior Court of Clark County have signed this latter document, which states the specific offenses with which petitioner is charged. There is no record of the charging instrument.

After respondent moved for summary judgment, petitioner filed an affidavit in which he stated that "I have read [the petition], know the contents thereof, and all of the facts alleged therein are, to the best of my knowledge, true and correct." Among the "facts" that petitioner alleged to be correct was his statement that he "was not present in [Washington] *when said crime was alleged to be committed.*" (Emphasis added.) If petitioner's statement created a genuine issue of material fact, entry of summary judgment would have been improper. However, even if we take as undisputed petitioner's statement that he was not in Washington when the crimes allegedly were committed, such statement is insufficient to establish that petitioner is not a fugitive.

We reach this conclusion because the trial court could, and apparently did, find from the evidence that petitioner was in Washington at some time (by inference), is charged with crimes in that state, and now is in Oregon. Petitioner does not offer evidence or claim that he was not in Washington before the crimes are alleged to have been committed. As was noted, it is not relevant that petitioner denies being in Washington on the date that the charging instrument might allege the crimes to have taken place.

If petitioner had alleged that he had *never* been in Washington at any time before or after the alleged offenses, we might have an entirely different case. But petitioner claims merely that he was not in Washington on the date the crimes allegedly took place. The state has met its burden of establishing absence of an issue of material fact regarding petitioner's status as a fugitive.

The petition for review is allowed. The decisions of the trial court and Court of Appeals are affirmed.