Argued and submitted April 28, affirmed November 2, 1994, petition for review
denied February 14, 1995 (320 Or 569)

# STATE OF OREGON,
## *Respondent,*

### *v.*

# KENNETH S. ESTES,
## *Appellant.*

### (CM90-0841; CA A76349)

883 P2d 1335

David K. Allen, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were

Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

RIGGS, J.

## RIGGS, J.

Defendant appeals his convictions for rape in the first degree and burglary in the first degree. ORS 163.375; ORS 164.225. He argues that the failure of Idaho officials to "promptly" inform him of the detainer[1] lodged against him, as required by the Interstate Agreement on Detainers (IAD), requires dismissal of the charges against him. He also argues that the court erred in imposing a departure sentence. We affirm.

On November 28, 1990, a Benton County Grand Jury indicted defendant on counts of rape in the first degree and burglary in the first degree. He was found to be in the custody of Idaho officials and, on December 27, 1990, the Benton County District Attorney's office notified the Idaho Department of Corrections of the indictment and requested that a detainer be placed upon him. The Idaho Department of Corrections mailed a "Detainer Notification Acknowledgement" to the Benton County District Attorney on January 3, 1991. However, the Idaho officials did not notify defendant of the existence of the detainer until August 7, 1991. Defendant filed a motion for dismissal based on the delay in notifying him of the detainer. That motion was denied, and, in June, 1992, he was convicted of rape in the first degree and burglary in the first degree.

At sentencing, defendant's gridblock was 10-C, with a presumptive term of 115 months. The court imposed the maximum upward departure of 230 months, based on its finding that

> "this gentleman * * * committed a very serious rape at knife-point on a person in a motel room, went to prison for that, left prison, and is arrested and convicted for doing * * * identically the same thing, even to the fact — to the very fact of how the intercourse was accomplished. And he's consistently denied his involvement in the first offense. He's denied his involvement in the second offense. He's given the court no indication that his behavior's going to change in any way in the future."

---

[1] A "detainer" is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent.

■■    Defendant first assigns error to the denial of his motion to dismiss. He argues that the failure of Idaho officials to "promptly" inform him of a detainer lodged against him, as required by the IAD, requires the dismissal of the charges filed against him. The IAD, codified in Oregon at ORS 135.775, is " 'a congressionally sanctioned interstate compact the interpretation of which presents a question of federal law.' " *Thomas v. Keeney*, 307 Or 526, 528 n 1, 771 P2d 249 (1989) (quoting *Cuyler v. Adams*, 449 US 433, 442, 101 S Ct 703, 66 L Ed 2d 641 (1981)). We review for errors of law. *State v. Burss*, 316 Or 1, 848 P2d 596 (1993). It establishes procedures under which a prisoner may initiate his transfer to the receiving state and procedures that ensure protection of the prisoner's speedy trial rights. *Cuyler v. Adams, supra*, 449 US at 435 n 1. Article III(c) of the IAD provides:

> "The warden or other official having custody of the prisoner shall *promptly inform the prisoner of the source and contents of any detainer* lodged against the prisoner and shall also inform the prisoner of the right to make a request for final disposition of the indictment, information or complaint on which the detainer is based." (Emphasis supplied.)

The trial court correctly concluded that the seven-month delay between the Idaho officials' receipt of the detainer and their notification of defendant was not "prompt" notice of the detainer. However, the IAD does not contain a remedy for a violation of Article III(c). The trial court decided that dismissal was not appropriate.

It appears that no court has considered the appropriate remedy for a violation of Article III(c)'s requirement of "prompt" notification. We first note that, although the IAD does mandate dismissal in some circumstances, *e.g.*, Article V(c) provides that if the action on the basis of which a detainer is lodged is not brought to trial within 180 days after the prisoner requests a final determination, then the court "shall enter an order dismissing the same with prejudice," it does not provide a remedy for violations of the prompt notification requirement. Given that statutory silence, we decline to insert a remedy of dismissal where none is provided. ORS 174.010.

Our approach comports with *Fex v. Michigan*, 507 US ___, 113 S Ct 1085, 122 L Ed 2d 406 (1993). There, the

Court addressed the issue of when the 180-day limitation in Article III(a)[2] began to run—*i.e.*, at the time the defendant submitted his request for final disposition, or when the prosecutor received the request. After finding the statutory text ambiguous, the Court considered "the sense of the matter." The Court noted that, if the 180-day period was triggered by the defendant's request, then a negligent warden, who failed to communicate timely that request to prosecutors in the receiving states, could preclude prosecution altogether. The Court rejected this result as inconsistent with the IAD's purposes:

> "[I]t is more reasonable to think that the receiving State's prosecutors are in no risk of losing their case until they have been *informed* of the request for trial." 122 L Ed 2d at 415.

Here, if defendant were correct that lack of prompt notification warrants dismissal, then prison officials in one state could preclude prosecution in another state by failing to inform a prisoner that a detainer had been lodged. *Fex* counsels against that result. We note further that defendant does not allege any bad faith on the part of the Idaho officials, and did not suffer any prejudice, either to his rehabilitative program in Idaho,[3] or to his speedy trial rights in Oregon.[4] In those circumstances, defendant is not entitled to dismissal based on violation of IAD Article III(c).

■ Defendant next assigns error to the imposition of a departure sentence. He argues that the court failed to articulate any reason why the presumptive term is inadequate. As we explained in *State v. Wilson*, 111 Or App 147, 826 P2d

---

[2] Article III(a) provides:

"Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *the prisoner shall be brought to trial within 180 days after the prisoner shall have caused to be delivered* to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of imprisonment and the request of the prisoner for a final disposition * * *." (Emphasis supplied.)

[3] *See generally United States v. Roberts*, 548 F2d 665 (6th Cir), *cert den* 431 US 931 (1977).

[4] We note that the crime was committed October 20, 1990, defendant was indicted November 28, 1990, a detainer was lodged with the Idaho officials January 3, 1991, and defendant was notified of the detainer August 7, 1991.

1010 (1992), we review a trial court's imposition of a departure sentence to determine whether the reasons given by the trial court are appropriate:

> "That is, we review the explanation of why the circumstances are so exceptional that imposition of the presumptive sentence would not accomplish the purpose of the guidelines. If the explanation does not demonstrate that, we must remand for resentencing. ORS 138.222(5). If it does, we will not disturb the trial court's exercise of discretion." 111 Or App at 151.

The trial court first considered the sentencing issues at a hearing on July 9, 1992. At that time, the court concluded that a departure was appropriate. The court's explanation of the reason for the departure appeared to be based on its conclusion that the "persistent involvement" factor in the guidelines was satisfied. The hearing was continued, however, to obtain a supplemental presentence report.

The sentencing hearing was reconvened on July 22, 1994. At that time, the state brought to the court's attention our decisions in *State v. Clark*, 113 Or App 692, 833 P2d 1341 (1993), and *State v. Rodriguez*, 113 Or App 696, 833 P2d 1343 (1993), holding that conviction of one previous offense does not, *per se*, constitute "persistent involvement." The state asked the court to clarify its reasons for the departure in view of those decisions. The court then supplemented its explanation of its reasons for the departure. It is clear from that explanation that the court did not rely on the fact that there was a prior conviction to justify the departure and was not relying on the specific aggravating factors listed in the guidelines. The court's discussion of the considerations that it believed justified the departure show the facts from which the court concluded that future efforts to rehabilitate defendant will not be successful. The trial court sufficiently explained why the imposition of the presumptive sentence would not accomplish the purpose of the guidelines to ensure the security of the public. OAR 253-02-001; *State v. Wilson, supra*, 111 Or App at 150. The trial court did not abuse its discretion in imposing the departure sentence.

Affirmed.