STATE OF NEBRASKA, APPELLEE, V.
JAMES HENRY STEELE, APPELLANT.
578 N.W. 2d 508

Filed May 26, 1998.  No. A-97-378.

Dennis R. Keefe, Lancaster County Public Defender, and Shawn Elliott for appellant.

Don Stenberg, Attorney General, and William L. Howland for appellee.

MILLER-LERMAN, Chief Judge, and HANNON and IRWIN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

James Henry Steele appeals the order of the district court for Lancaster County denying his petition for writ of habeas corpus

and authorizing his transfer to the State of Iowa to stand trial on pending criminal charges. On appeal, Steele contends that his petition should have been granted because the documents offered by the State of Nebraska in support of the transfer were not in order. For the reasons stated below, we affirm.

## II. FACTUAL BACKGROUND

On March 1, 1995, Steele was sentenced in the district court for Dakota County, Nebraska, to two consecutive sentences of 15 to 30 years' imprisonment after entering pleas of no contest to two counts of first degree sexual assault. He is currently serving the above sentences.

On September 15, 1995, Steele was advised that the State of Iowa had requested his temporary custody due to untried charges of sexual abuse in the second degree in Woodbury County, Iowa. A formal request for temporary custody from the State of Iowa to the Nebraska Department of Correctional Services (DCS) states that Steele was charged in Woodbury County, Iowa, with three counts of sexual abuse in the second degree. On October 9, 1996, Steele indicated in a document entitled "Interstate Agreement on Detainers Form V-A" that he elected to appear before a court and apply for a writ of habeas corpus. Form V-A, which advises a prisoner of his or her rights, explains that the untried complaint in Woodbury County charged three counts of second degree sexual abuse.

On October 23, 1996, DCS requested that Governor E. Benjamin Nelson of Nebraska indicate whether he would honor Iowa's request for temporary custody. In the letter to the Governor, DCS stated that the detainer involved one count of second degree sexual abuse. On December 2, Governor Nelson authorized the temporary transfer of Steele to Iowa.

On January 29, 1997, the State filed in the district court for Lancaster County a motion to transfer temporary custody. In the same case, Steele filed a petition for writ of habeas corpus on February 18. A hearing was held on Steele's petition on February 27, at which time the documents described above were received by the district court. Upon the State's motion to offer additional evidence after the February 27 hearing, the court received the Woodbury County complaint and applicable Iowa

statutes. Thereafter, the district court denied Steele's petition and authorized his transfer to Iowa. This appeal timely followed.

## III. ASSIGNMENT OF ERROR

Steele assigns that the district court erred in denying his petition for writ of habeas corpus and authorizing his transfer to Iowa.

## IV. ANALYSIS

### 1. AGREEMENT ON DETAINERS

 The State of Iowa requested temporary custody of Steele pursuant to the Agreement on Detainers (Agreement), found in Nebraska at Neb. Rev. Stat. § 29-759 et seq. (Reissue 1995). The Agreement is a compact which has been adopted by 48 states, the District of Columbia, and the United States. *Cooney v. Fulcomer*, 886 F.2d 41 (3d Cir. 1989). The Agreement was designed to encourage the expeditious and orderly disposition of outstanding criminal charges filed against a prisoner incarcerated in a different jurisdiction. Art. I of the Agreement. Although not defined by the Agreement, a detainer is generally recognized as a notification filed with an institution in which an individual is serving a sentence, advising the prisoner that he or she is wanted to face criminal charges pending in another jurisdiction. *State v. Reynolds*, 218 Neb. 753, 359 N.W.2d 93 (1984).

The Agreement sets forth two procedures designed to effectuate its purpose. The terms of the Agreement may be activated by either the prisoner or the receiving state. *Reynolds, supra.* In the case before us, Iowa, the receiving state, sought the transfer of Steele. Article IV of the Agreement sets forth procedures by which the authorities in the state where the charges are pending, the receiving state, may initiate the process whereby a prisoner is returned to the receiving state for trial. The process begins when a prosecutor of the receiving state files a written notice of the custody request with the sending state. The notice must be approved by a court having jurisdiction to hear the underlying charges. A 30-day waiting period follows, in which the governor of the sending state may disapprove the request for custody. After the waiting period has expired, the sending state must honor the request and make the prisoner available to the receiv-

ing state. See art. IV(a) of the Agreement. The receiving state then has 120 days after the prisoner arrives to try him or her, unless a continuance is granted upon good cause shown. See art. IV(c) of the Agreement. Article IV(e) of the Agreement requires that the receiving state dispose of all pending charges against the prisoner before returning him or her to the sending state.

## 2. HABEAS CORPUS RELIEF

■ A requested transfer under the Agreement may be challenged by a prisoner through petitioning for a writ of habeas corpus. See *Cuyler v. Adams*, 449 U.S. 433, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981). In *Cuyler*, the Court held that a prisoner being transferred to another state pursuant to article IV of the Agreement has available any preexisting rights under state or federal law to challenge his or her transfer to the receiving state. This would include rights under the Uniform Criminal Extradition Act, codified in Nebraska in Neb. Rev. Stat. § 29-729 et seq. (Reissue 1995). See *Cuyler*. The Nebraska Supreme Court has held that a person being extradited has a right to file a petition for writ of habeas corpus. *Radant v. Vargason*, 220 Neb. 116, 368 N.W.2d 483 (1985). Through such a petition, a person being extradited is limited to challenging (1) whether the extradition documents on their face are in order, (2) whether the petitioner has been charged with a crime in the demanding state, (3) whether he or she is the person named in the request for extradition, and (4) whether he or she is a fugitive. *Radant, supra*, quoting *Michigan v. Doran*, 439 U.S. 282, 99 S. Ct. 530, 58 L. Ed. 2d 521 (1978).

■ Based on the above case law, a prisoner whose transfer is sought by a receiving state under the Agreement may challenge through a petition for writ of habeas corpus whether the documents on their face are in order, whether the petitioner has been charged with a crime in the receiving state, and whether he or she is the person named in the request for temporary custody. A challenge to one's fugitive status is not applicable to a challenge to a detainer because the challenger is incarcerated.

■ We note that in an action for writ of habeas corpus, including one which challenges extradition proceedings, the burden of proof is upon the petitioner to establish his or her

claim that his or her detention is illegal. *Dovel v. Adams*, 207 Neb. 766, 301 N.W.2d 102 (1981). Unless a de novo review in a habeas corpus proceeding has been authorized, such as in habeas corpus cases involving the custody of a child, *Hohndorf v. Watson*, 240 Neb. 368, 482 N.W.2d 241 (1992), an appellate court's function in a habeas proceeding is limited to a review of the record to determine if reversible error was committed by the lower court. 39A C.J.S. *Habeas Corpus* § 253 (1976).

### 3. RESOLUTION

In the case before us, Steele asserts only that the documents offered by the State demonstrated, on their face, that they were not in order. Steele argues that the documents are not in order because there is a discrepancy in the number of counts pending in Iowa.

We agree that the documents are inconsistent regarding the number of counts of sexual abuse charged in Woodbury County. A review of the documents shows that the formal request for temporary custody and form V-A indicate that the offenses charged include three counts of second degree sexual abuse. In contrast, the letter to the Governor states there is one count. Form I, entitled "Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition," informed Steele that there were untried complaints in Woodbury County for second degree sexual abuse. However, it is clear from the documents that at least one count of second degree sexual abuse was charged.

The Agreement sets forth what charges for which the receiving state may prosecute a prisoner transferred under the Agreement. Article V(d) provides:

> The temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations or complaints which form the basis of the detainer or detainers or *for prosecution on any other charge or charges arising out of the same transaction.*

(Emphasis supplied.)

 Courts have held that article V(d) permits the receiving state to prosecute the defendant not only for the charge or

charges forming the basis of the detainer but also on all other charges arising out of the same transaction. See, *Cooney v. Fulcomer*, 886 F.2d 41 (3d Cir. 1989); *Parker v. U.S.*, 590 A.2d 504 (D.C. App. 1991), *cert. denied* 502 U.S. 973, 112 S. Ct. 451, 116 L. Ed. 2d 469; *People v Browning*, 108 Mich. App. 281, 310 N.W.2d 365 (1981); *Espinoza v. State*, 949 S.W.2d 10 (Tex. App. 1997), *cert. denied* 523 U.S. 1010, 118 S. Ct. 1199, 140 L. Ed. 2d 327 (1998). Thus, if the three counts in the Woodbury County complaint arose from the same transaction, article V(d) was not violated by any inconsistency in the detainer documents regarding the number of counts pending. To restate, if all the counts charged arose from the same transaction, Steele's transfer to Iowa is appropriate.

The State offered the complaint underlying Iowa's request for temporary custody. The complaint provides that Steele was charged with three counts of second degree sexual abuse, that these crimes occurred on October 31, 1993, in Sioux City, Iowa, and that the sexual acts were committed upon Jane Doe, a minor child. Based on the facts provided in the information, we conclude that the three counts of sexual abuse clearly arose out of the same transaction. Therefore, article V(d) of the Agreement was not violated.

Even if the documents were defective, habeas relief is not necessarily warranted. The Agreement does not contain a specific remedy for a violation of article V(d). The Agreement provides for the remedy of dismissal of charges with prejudice only in three specific cases: (1) if trial is not commenced within the period prescribed in articles III(a) and IV(c) as specified by article V(c), (2) if trial does not commence before the prisoner is returned to the sending state pursuant to article IV(e), and (3) if the receiving state fails or refuses to accept temporary custody under article V(c). See, *State v. Reynolds*, 218 Neb. 753, 359 N.W.2d 93 (1984); *Commonwealth v. Gonce*, 320 Pa. Super. 19, 466 A.2d 1039 (1983). Where a legislature has chosen to mention specific situations where dismissal of charges is appropriate, a court will not generalize the relief and extend it to cover other errors under the Agreement. See, *Reynolds, supra*; *Gonce, supra*.

Minor, technical violations of the Agreement are not sufficient to require the granting of habeas relief. *Cooney, supra.* Habeas relief is appropriate for violations for which the Agreement does not provide a specific remedy only upon a showing of prejudice. See, *Cooney, supra; Parker, supra; State v. Wells*, 94 Ohio App. 3d 48, 640 N.E.2d 217 (1994); *Commonwealth v. Boyd*, 451 Pa. Super. 404, 679 A.2d 1284 (1996).

The record shows that Steele was notified of the nature of the offenses charged, where the offenses were alleged to have been committed, and the date the offenses were alleged to have taken place. Steele was provided, and availed himself of, a full and fair opportunity to contest his transfer. Furthermore, Steele has not demonstrated that the inconsistencies in the documents prejudiced his ability to defend at trial or the circumstances of his incarceration. See *Cooney, supra.* We cannot conclude that any inconsistency in the documents constituted unfair prejudice to Steele.

## V. CONCLUSION

For the reasons stated above, we conclude that Steele is not entitled to habeas relief. Therefore, the district court did not err in denying Steele's petition for a writ of habeas corpus. We affirm.

AFFIRMED.