STATE OF NEBRASKA, APPELLEE, V.
VINSON HORACE CHAMP, APPELLANT.
631 N.W.2d 557

Filed July 31, 2001.   No. A-00-1296.

Dennis R. Keefe, Lancaster County Public Defender, and Shawn Elliott for appellant.

Don Stenberg, Attorney General, and William L. Howland for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

Vinson Horace Champ is incarcerated under the jurisdiction of the Nebraska Department of Correctional Services (Department) under a 25- to 30-year sentence for sexual assault from Douglas County, Nebraska, which we affirmed without opinion in *State v. Champ*, 10 Neb. App. xix (No. A-00-803, Mar. 27, 2001), as well as a 30- to 40-year sentence from Lancaster County for sexual assault, affirmed in *State v. Champ*, No. A-00-617, 2001 WL 273071 (Neb. App. Mar. 20, 2001) (not designated for permanent publication). While incarcerated on those sentences, Nebraska prison authorities received paperwork from the State of Iowa in July 2000, pursuant to the Agreement on Detainers, showing that kidnapping, sexual abuse, and robbery charges were pending

against Champ in Scott County, Iowa. The papers showed that Iowa authorities wanted Champ transferred to their jurisdiction so that he could be prosecuted on the pending Iowa charges. Champ challenged the detainer by a petition for writ of habeas corpus, which was denied by the district court for Lancaster County, Nebraska. Champ appeals.

## PROCEDURAL BACKGROUND

The district court for Scott County issued an arrest warrant on May 15, 1997, for Champ based upon a police officer's complaint and affidavit which alleged that Champ had committed three crimes in Davenport, Scott County: At approximately 9:10 p.m. on February 16, 1997, Champ allegedly committed the crimes of first degree kidnapping, second degree sexual abuse, and first degree robbery in violation of various Iowa statutes. The affidavit recounted an ongoing investigation in the Midwest of 10 attempted sexual assaults occurring on college campuses with specified commonalities and that in 4 cases, the suspect had been positively linked and identified by DNA analysis. The affidavit recounted that in one of the Midwestern cases, the fleeing suspect was seen getting into a newer, sporty, black 4-door vehicle and that on May 5, 1997, a sexual assault in Pasadena, California, was interrupted by a citizen who followed the assailant to a black 4-door BMW. The license plate on that vehicle established Champ as the owner.

On July 10, 2000, the Scott County sheriff filed his warrant with the Department on the three Iowa charges. The Department treated the paperwork as a detainer. The Scott County sheriff advised that they would extradite and transport Champ. On July 17, Champ was served with the detainer, including notice of untried indictment, information, or complaint and of right to request deposition. Champ refused to sign any of the papers. On October 27, Nebraska Governor Mike Johanns authorized the Department to honor Iowa's request for custody of Champ. The Governor authorized the Department to deliver Champ to Iowa authorities upon completion of the required pretransfer hearing in the district court for Lancaster County, as required by *Cuyler v. Adams*, 449 U.S. 433, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981). That hearing was held on November 14, and the district court

judge authorized Champ's transfer. No issues are presented here concerning that hearing.

At the time of the *Cuyler* hearing, Champ advised the court of his intention to challenge the detainer by petition for writ of habeas corpus, which his counsel immediately filed, and a hearing was held thereupon on November 17, 2000. Champ has stipulated and agreed that he is the same person who is wanted in the State of Iowa and is referenced in the paperwork from the State of Iowa. Relying on this court's opinion in *State v. Steele*, 7 Neb. App. 110, 578 N.W.2d 508 (1998), the district court denied the petition for habeas corpus and authorized Champ's temporary transfer to the State of Iowa to stand trial. The court stayed its order pending this appeal, which stay remains in effect.

## ASSIGNMENT OF ERROR

Champ's sole assignment of error is: "The District Court erred in denying the Appellant's petition for habeas relief due to the State's failure to establish fugitive status."

## STANDARD OF REVIEW

■ An appellate court's function in a habeas proceeding is limited to a review of the record to determine if reversible error was committed by the lower court. *State v. Steele, supra.*

## ANALYSIS

Champ's argument has several layers. The first layer is that the district court erred in following this court's opinion in *State v. Steele* when the district court judge ruled that "based upon the ruling in *Steele*, his status as a fugitive is not applicable and his petition is without merit." Champ asks us to determine whether *State v. Steele* dictates the result reached by the district court. Champ argues that fugitive status is in fact at issue in this proceeding. While he appears to acknowledge that the warrant creates a presumption that he is a fugitive, as the next layer of his argument he claims that the contents of the affidavit behind the warrant from the Scott County District Court show that there "was no evidence which would support any presumption that [Champ] was in the State of Iowa at the time the crime allegedly occurred." Brief for appellant at 14. The State's response relies upon our earlier opinion in *State v. Steele* to argue that fugitive

status is not applicable in a detainer situation because the challenger is incarcerated.

■ *State v. Steele* involved a nearly identical situation where the State of Iowa requested temporary custody of Steele pursuant to the Agreement on Detainers, Neb. Rev. Stat. § 29-759 et seq. (Reissue 1995). The court in *State v. Steele* comprehensively discussed the Agreement on Detainers and the applicable procedure, as well as the prisoner's right to challenge the transfer to another state by a petition for writ of habeas corpus. We will not repeat that discussion here. The court in *State v. Steele*, citing *Michigan v. Doran*, 439 U.S. 282, 99 S. Ct. 530, 58 L. Ed. 2d 521 (1978), said that the person against whom a detainer is lodged, or against whom extradition is sought, is limited to challenging (1) whether the extradition documents on their face are in order, (2) whether the petitioner has been charged with a crime in the demanding state, (3) whether he or she is the person named in the request for extradition, and (4) whether he or she is a fugitive.

In *State v. Steele*, the only issue was whether the documents were in order. In dicta, the court discussed fugitive status in a detainer situation, stating as follows:

> Based on the above case law [referencing *Cuyler v. Adams*, 449 U.S. 433, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981); *Michigan v. Doran, supra*; and *Radant v. Vargason*, 220 Neb. 116, 368 N.W.2d 483 (1985)], a prisoner whose transfer is sought by a receiving state under the Agreement [on Detainers] may challenge through a petition for writ of habeas corpus whether the documents on their face are in order, whether the petitioner has been charged with a crime in the receiving state, and whether he or she is the person named in the request for temporary custody. A challenge to one's fugitive status is not applicable to a challenge to a detainer because the challenger is incarcerated.

*State v. Steele*, 7 Neb. App. 110, 114, 578 N.W.2d 508, 512 (1998). Although the statement that "a challenge to one's fugitive status is not applicable to a challenge to a detainer because the challenger is incarcerated" was only dicta because fugitive status was not at issue in the case, the statement is not entirely correct.

■ Fugitive status involves two elements: To be a fugitive, one need only have left the demanding state after having committed an act charged to be a crime under the laws of that state. *Nash v. Miller*, 223 Neb. 605, 391 N.W.2d 143 (1986). See *Kujala v. Headley*, 193 Neb. 1, 225 N.W.2d 25 (1975). To the extent the court in *State v. Steele* indicated by its dicta that whether a person has left the demanding state is incontestably proved when the person is incarcerated in an asylum state, the statement accurately reflects that that part of the fugitive status test will not be at issue in a detainer case. Incarceration in the asylum state obviously shows that the person has left the demanding state. However, whether the prisoner committed an act charged to be a crime under the laws of that state may be open to question. As such, the second part of the fugitive status test may be at issue in a detainer case and may be challenged by a habeas petitioner in a detainer case. To the extent the dicta in *State v. Steele* suggests otherwise, that dicta is incorrect. Fugitive status is the final matter which the prisoner may challenge according to the U.S. Supreme Court in *Michigan v. Doran, supra*. Thus, to the extent noted above, the dicta in *State v. Steele* that fugitive status is "not applicable" in a habeas challenge to a detainer request is disapproved.

■ However, it is important to correctly articulate what challenge may be made to fugitive status, even when the person sought is incarcerated. It clearly does not involve a trial in Nebraska over whether Champ committed the crimes charged against him by the Scott County District Court. The question of whether one is charged with a crime and is therefore a fugitive is discussed in *State v. Wallace*, 240 Neb. 865, 484 N.W.2d 477 (1992). In that case, Wallace asserted that the extradition documents could not be "in order" unless they showed that the person being demanded was "substantially charged." In response to that argument, the Nebraska Supreme Court agreed and said:

> We agree that in *Michigan v. Doran, supra*, the Supreme Court implied that there must have been such a determination of probable cause by its holding that "when a neutral judicial officer of the demanding state has determined that probable cause exists, the courts of the asylum state are without power to review the determination." 439 U.S. at

290. See, *Rodgers v. Adams*, 212 Neb. 716, 717, 325 N.W.2d 157, 158 (1982) (affidavit of probable cause made by assistant state attorney attached to certificate of judge that " 'probably [sic] cause' " existed held sufficient to comply with requirement that a determination of probable cause be made by neutral judicial officer); *Ex parte Rosas*, 810 S.W.2d 315 (Tex. App. 1991).

*Wallace*, 240 Neb. at 868-69, 484 N.W.2d at 480.

In *Rodgers v. Adams*, 212 Neb. 716, 325 N.W.2d 157 (1982), one of the extradition documents was an affidavit of probable cause from an assistant state attorney of Florida and attached thereto was a certificate signed by a circuit judge of Florida that probable cause existed. The *Rodgers v. Adams* court found this sufficient to comply with the requirement that a determination of probable cause has been made by a neutral judicial officer of the demanding state.

Therefore, applying the foregoing to the instant case, the second part of the test for fugitive status is at issue, even though this is a detainer case and Champ is incarcerated. The portion of our dicta in *State v. Steele* disapproved above led the district court judge to the wrong reasoning process, but not to the wrong result. The issue is whether the paperwork contains a showing that there has been a determination of probable cause by a neutral judicial officer. See *Rodgers v. Adams, supra.*

Offered and received in evidence in the trial court is exhibit 2, which includes the warrant of arrest of May 15, 1997, issued by the "District Court in and for Scott County, Iowa," upon the complaint and affidavit of Capt. Michael G. Venema. That arrest warrant constitutes the determination of a neutral judicial officer of the State of Iowa that probable cause exists for the arrest of Champ for the crimes charged against him in Scott County. Beyond determining whether the warrant was issued by a neutral judicial officer, the law is clear that we do not go behind the warrant and make our own determination of probable cause. In *Zambito v. Blair*, 610 F.2d 1192 (4th Cir. 1979), *cert. denied* 445 U.S. 928, 100 S. Ct. 1316, 63 L. Ed. 2d 761 (1980), the court, citing *Michigan v. Doran*, 439 U.S. 282, 99 S. Ct. 530, 58 L. Ed. 2d 521 (1978), said that it is clear that the asylum state may not itself hold a traditional probable cause

hearing when extradition documents are in order on their face, but the person sought may inquire into the correctness of the statement in the papers that a finding of probable cause has been made. In the papers in the instant case, there is the officer's affidavit, as well as the arrest warrant signed by the Scott County District Court judge.

In *Zambito v. Blair, supra*, it was enough that the demanding state supplied a missing certificate of probable cause, and the court said it would not force the demanding state to reissue the warrant, as it was the actuality of the finding of probable cause by a neutral judicial officer that was important, not whether the asylum state considers that there is probable cause to believe that the person sought committed the crime charged in the demanding state.

Champ's only challenge to the detainer is that he is not a fugitive. In that context, he asserts that the affidavit upon which the warrant was issued was "insufficient . . . to establish that [Champ] was in Iowa on February 16, 1997." Brief for appellant at 15. Champ then asserts that there is "long standing case law which obligates the asylum state to make some showing of the prisoner's physical presence in the demanding state on the date the crime is alleged to have occurred." Brief for appellant at 15-16. These propositions are not supported by citation to any authority and are directly contrary to the established law concerning extradition and detainers.

The finding of probable cause need not be provided by the asylum state, adversarial procedures are not required, and it is sufficient if the demanding state provides the determination of probable cause by a neutral judicial officer. *Ierardi v. Gunter*, 528 F.2d 929 (1st Cir. 1976). The *Ierardi v. Gunter* court gives the example that if

> papers submitted by Florida were to show that a judicial officer or tribunal there had found probable cause, Massachusetts would not need to find probable cause anew, nor would it need to review the adequacy of the Florida determination. Instead, it would be entitled to rely on the official representations of its sister state that the requisite determination had been made.

*Id.* at 931.

In short, the asylum state is without power to review the determination of probable cause by the demanding state. *Gerard v. Ossola,* 649 P.2d 1110 (Colo. 1982). See *Sloss v. Sheriff of Leavenworth County,* 7 Kan. App. 2d 702, 648 P.2d 255 (1982). The procedure under the Agreement on Detainers is intended to be a summary procedure and is not intended to determine guilt or innocence. *Thomas v. Keeney,* 307 Or. 526, 771 P.2d 249 (1989).

We hold that the district court properly denied the petition for writ of habeas corpus by rejecting the claim that fugitive status had not been proved: Champ clearly left the State of Iowa and is now incarcerated in Nebraska, and there was a determination that probable cause existed to charge him with the crimes in Scott County when the district court judge in that jurisdiction issued the warrant. Consequently, Champ has been "substantially charged" in Iowa and is a fugitive. Thus, Champ's assignment of error is without merit, and he may be transported to Iowa to answer the charges lodged against him there. Upon the issuance of our mandate, the district court shall dissolve its stay.

AFFIRMED.