**SHACK, Murray, Appellant,**

v.

**The ATTORNEY GENERAL OF the STATE OF PENNSYLVANIA, Warden of Rahway State Prison, New Jersey, District Attorney of Delaware County.**

**No. 84–1598.**

United States Court of Appeals, Third Circuit.

Argued Sept. 24, 1985.
Decided Nov. 14, 1985.

David S. Rudenstein (Argued), Philadelphia, Pa., for appellant.

John A. Reilly, Dist. Atty., Sandra L. Elias (Argued), Deputy Dist. Atty., Media, Pa., for appellees.

Before GIBBONS, SLOVITER, and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

This is an appeal from a final judgment of the United States District Court for the Eastern District of Pennsylvania denying appellant habeas corpus relief. We affirm.

### I.

On May 11, 1979, appellant Murray Shack, having been convicted of a New Jersey criminal offense, was sentenced to a term of imprisonment. Pennsylvania authorities then lodged a detainer against Shack on the basis of an arrest warrant issued for a Pennsylvania offense. On September 14, 1979, Shack was transferred from New Jersey to stand trial in Pennsylvania. Prior to this transfer, no hearing was conducted as required by New Jersey's Uniform Criminal Extradition Act, N.J. Stat.Ann. § 2A:160–18 (West 1971), and the Interstate Agreement on Detainers ("IAD"), N.J.Stat.Ann. § 2A:159A–4 (West 1971), which has been held to incorporate the hearing requirement of the Extradition Act. *Cuyler v. Adams*, 449 U.S. 433, 448, 101 S.Ct. 703, 711, 66 L.Ed.2d 641 (1980).

After transfer to Pennsylvania and prior to trial, Shack sought habeas corpus relief in the Court of Common Pleas and, subsequently, in the federal district court. Relief was denied by the state court on the ground that he had waived his right to a pre-transfer hearing and by the federal court on the ground that he had failed to exhaust his state remedies. The district court, 593 F.Supp. 1329, certified that there was no probable cause for appeal and this court denied a motion to issue a certificate of probable cause for appeal.

On November 20, 1979, Shack was found guilty of the Pennsylvania offense and was sentenced by a Pennsylvania court to a term of imprisonment which he is currently serving. Following sentencing in Pennsylvania and exhaustion of his state remedies, Shack again unsuccessfully sought federal habeas corpus relief.

Shack advances two theories, both of which are predicated on the failure of New Jersey to provide him a pre-transfer hearing during the extradition proceedings. The first is that this defect in those proceedings deprived Pennsylvania of jurisdiction to try him and that the ensuing conviction accordingly deprived him of his liberty without due process of law in violation of the Fourteenth Amendment. Shack's second theory is that by virtue of the failure of New Jersey to recognize the pre-transfer hearing requirement of the IAD, he is being held "in custody in violation of the ... laws ... of the United States." 28 U.S.C. § 2254(a) (1982).

### II.

In *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1951), the petitioner challenged his conviction by a Michigan court on the ground that he had been "forcibly seized, handcuffed, blackjacked" and taken by Michigan officers from Illinois to Michigan for trial in violation of the Federal Kidnapping Act. The Supreme Court denied habeas corpus relief holding that the petitioner's conviction did not violate

the due process clause. Justice Black, writing for the Court, explained:

This Court has never departed from the rule announced in *Ker v. Illinois,* 119 U.S. 436, 444, 7 S.Ct. 225, 229, 30 L.Ed. 421, that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a "forcible abduction." No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprised of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will.

342 U.S. at 522, 72 S.Ct. at 511.

■ It follows, *a fortiori,* that the existence of a procedural defect in Shack's extradition proceedings did not impair Pennsylvania's power to try him and that his confinement does not violate due process. *United States ex rel. Huntt v. Russell,* 285 F.Supp. 765, 767 (E.D.Pa.1968) ("if 'forcible abduction' for trial is no violation of due process, lack of counsel on extradition certainly is not"), *aff'd,* 406 F.2d 744 (3d Cir. 1969) (per curiam).

### III.

■ In *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1980), the Supreme Court held both that the IAD is federal law and that Article IV(d) of the IAD incorporates the pre-transfer hearing requirement of Section 10 of the Uniform Criminal Extradition Act. Thus, in one sense at least, Shack's Pennsylvania conviction rests on a violation of a federal law. Not all violations of federal law justify habeas corpus relief, however. As the Supreme Court has noted:

[T]he appropriate inquiry [is] whether the claimed error of law [is] "a funda-

mental defect which inherently results in a complete miscarriage of justice," and whether "[i]t ... present[s] exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent."

*Davis v. U.S.,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1973) (quoting *Hill v. U.S.,* 368 U.S. 424, 429, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)).

■ As the *Frisbie* case indicates, when one present in a court is convicted of a crime after notice and a fair trial, defects in the pretrial proceedings are not ordinarily considered sufficiently "fundamental" to justify collateral attack. Thus, for example, an illegal arrest provides no basis for a collateral attack on a judgment obtained after notice and a fair trial. *U.S. v. Crews,* 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980); *Green v. Yeager,* 332 F.2d 794 (3d Cir.1964) (per curiam), *aff'g* 223 F.Supp. 544 (D.N.J.1963). Similarly, a procedurally defective extradition proceeding is normally an inadequate basis for collateral relief. *Russell,* 406 F.2d 774, *aff'g* 285 F.Supp. 765. *See also Weddell v. Meierhenry,* 636 F.2d 211, 214–215 (8th Cir.1980), *cert. denied,* 451 U.S. 941, 101 S.Ct. 2024, 68 L.Ed.2d 329 (1981); *Houston v. Lane,* 636 F.2d 1217 (6th Cir.1980), *aff'g without opinion* 501 F.Supp. 5, 6 (E.D. Tenn.1978), *cert. denied,* 450 U.S. 1003, 101 S.Ct. 1714, 68 L.Ed.2d 207 (1981); *Barton v. Malley,* 626 F.2d 151, 160 (10th Cir.1980).

Shack argues that his case is distinguishable from other defective extradition cases because this court and others have accorded special status to rights secured by the IAD. He relies on *U.S. v. Williams,* 615 F.2d 585 (3d Cir.1980); *U.S. v. Esola,* 520 F.2d 830 (3d Cir.1975); and *Cavallaro v. Wyrick,* 701 F.2d 1273 (8th Cir.), *cert. denied,* 462 U.S. 1135, 103 S.Ct. 3120, 77 L.Ed.2d 1372 (1983). His analysis of this case law paints with too broad a brush, however.

In *Williams* and *Esola,* we held that a violation of IAD Article IV(e) can serve as a basis for habeas corpus relief. IAD Article IV(e), N.J.Stat.Ann. § 2A:159A–4(e)

(West 1971), provides for automatic dismissal with prejudice of "any indictment, information or complaint" leading to the transfer of a prisoner who is not tried prior to his return to the "original place of imprisonment." We held in *Williams* that Congress, by providing in Article IV(e) for an absolute defense to a criminal prosecution, had identified transfer and return without trial as a fundamental defect requiring remedy by habeas corpus. *Williams,* 615 F.2d at 590. *Esola* was based on the same premise.

At issue in this appeal is not IAD Article IV(e) but IAD Article IV(d) and Section 10 of the Uniform Criminal Extradition Act, N.J.Stat.Ann. § 2A:160–18 (West 1971), neither of which provides that a violation of its requirements occasions an automatic dismissal of the charge with prejudice. The critical premise underlying the *Williams* and *Esola* decisions is therefore absent. Congress has not legislatively rendered the failure to provide a pre-transfer hearing a fundamental defect.

In addition to *Williams* and *Esola,* appellant relies on *Cavallaro,* 701 F.2d 1273, a decision of the Eighth Circuit Court of Appeals. Appellant points out that the *Cavallaro* Court characterized the failure to provide a pre-transfer hearing as a fundamental defect. *Cavallaro,* 701 F.2d at 1275. However, the court did not do so in the context of a collateral attack on a judgment, the context of this appeal. Cavallaro sought habeas corpus relief in the sending state in order to prevent his transfer without a hearing. The court ordered that he not be transferred to the receiving state

without a pre-transfer hearing. There is a great deal of difference, however, between directing compliance with the pre-transfer hearing requirement of the IAD before there has been transfer and overturning a criminal conviction obtained after fair notice and a fair trial.

■ Congress has made no statement with respect to pre-transfer hearings comparable to its statement concerning returns to the sending state without trial. Perhaps this silence is attributable to an unwillingness on its part to flog one state for the failings of another. It may also reflect the fact that a primary purpose of a pre-transfer hearing is to assure that the prisoner transferred is the prisoner sought and trial in the receiving state reliably determines whether such is the fact. Appellant acknowledges the absence of a congressional declaration; he argues that a pre-transfer hearing is nevertheless important and that permitting collateral attack on the judgment of the receiving state would exert at least some indirect pressure on officials in the sending state to be more responsible in the future. We agree with Shack that the right to pre-transfer hearing is an important one. We note, however, that denial of that right by a state official is a violation of Section 1983 of the Civil Rights Act. *Cuyler,* 449 U.S. at 450, 101 S.Ct. at 712. One to whom a pre-transfer hearing is denied, accordingly, has a federally enforceable claim to damages and to injunctive relief.* There are thus sanctions for violations of Article IV(d) of the IAD We decline to add the extraordinary sanction of permitting a collateral attack on an other-

---

* In the *Cuyler* case, Adams, a Pennsylvania inmate who alleged that he was about to be involuntarily transferred to New Jersey without a pre-transfer hearing, sought declaratory, injunctive, and monetary relief under 42 U.S.C. § 1983 (1982). The Supreme Court held that Adams had "stated a claim for relief under [the Civil Rights Act] ... for violation by state officials of the terms of the ..." IAD, 449 U.S. at 450, 101 S.Ct. at 712, and remanded the case for trial. While *Cuyler* does not specifically so hold, we perceive no reason why one filing a civil rights action in the sending state would not be entitled, like the petitioner in *Cavallaro,* to an order requiring a hearing prior to any transfer. We

express no opinion on whether injunctive relief is available when, as here, the alleged defect is not raised until the inmate is in the receiving state. In such circumstances, an order directing the inmate's return to the sending state for an extradition hearing prior to trial in the receiving state would result in a violation of IAD Article IV(e) (i.e., a return to the sending state without trial) and arguably, at least, an automatic dismissal of the receiving state's charging document. This, obviously, would be a circumstance that a federal court in the receiving state would wish to consider in determining whether equitable relief was appropriate.

wise valid criminal conviction in the absence of some indication from Congress that it intended such a result.

#### IV.

The judgment of the district court will be affirmed.