Charles COONEY, Appellant,

v.

Thomas A. FULCOMER, Superintendent of State Correctional Institution at Huntingdon, Pa., and Leroy S. Zimmerman, Attorney General of Commonwealth of Pennsylvania, Appellees.

No. 89–5327.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6) Sept. 6, 1989.

Decided Sept. 19, 1989.

Allen C. Welch, Asst. Public Defender of Dauphin County, Harrisburg, Pa., for appellant.

Edward M. Marsico, Jr., Dist. Atty's Office, Harrisburg, Pa., for appellees.

Before MANSMANN, NYGAARD and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

Appellant, an inmate at the State Correctional Institution at Graterford, Pennsylvania, filed a petition for a writ of habeas corpus claiming that the Pennsylvania authorities violated the Interstate Agreement on Detainers, 42 Pa.Cons.Stat. §§ 9101–9108, (IAD), when it transferred him from New Jersey to Pennsylvania to stand trial on burglary charges. The district court denied the petition. The primary issue in this appeal is whether the Pennsylvania authorities violated Article V(d) of the IAD when they tried appellant on robbery charges filed after his arrival in Pennsylvania, which were not the basis of the detainer. While we conclude that the Commonwealth violated this provision of the IAD, we nevertheless hold that the violation was not so fundamental as to warrant the habeas relief requested by appellant. Accordingly, we will affirm the order of the district court denying the writ.

I.

Appellant Charles Cooney, a sentenced prisoner incarcerated in New Jersey, was returned to Dauphin County, Pennsylvania pursuant to the IAD on February 12, 1986 to stand trial on burglary charges. He did not contest the detainer. On March 4, 1986, a second criminal complaint was filed in Dauphin County against appellant charging him with two counts of robbery which were unrelated to the burglary charges. The burglary charges brought by the Harrisburg Police Department which formed the basis of the detainer were withdrawn by the Commonwealth on March 11, 1986. Dauphin County tried him on the two robbery counts on September 17, 1986. On September 18, 1986 appellant was convicted of both robbery charges. Prior to trial, appellant filed a motion to dismiss the charges claiming that the Commonwealth

violated the IAD. This motion was denied. Appellant filed timely post-trial motions in which he repeated his claim that the Commonwealth violated the IAD. The trial court again rejected his claim. On March 16, 1987, appellant was sentenced to a consecutive five to ten year term of imprisonment for each robbery. He appealed to the Superior Court of Pennsylvania, which affirmed the convictions. *Commonwealth v. Cooney*, 370 Pa.Super. 336, 536 A.2d 433 (1988). Appellant then filed a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania, which was denied, *Commonwealth v. Cooney*, 519 Pa. 651, 546 A.2d 56 (1988).

Having exhausted his state remedies, appellant filed the instant habeas petition on September 27, 1988, in which he repeated his allegation that the Commonwealth violated the IAD. The petition was referred to a magistrate, who recommended that the petition be denied. Appellant filed objections to the magistrate's report. On March 31, 1989, the district court adopted the magistrate's report and dismissed the petition. The district court then granted appellant's application for a certificate of probable cause. This timely appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 2253. Since we are concerned with the interpretation and application of legal precepts, our standard of review is plenary. *Lewis v. Attorney General of U.S.*, 878 F.2d 714, 717 (3d Cir.1989).

## II.

■ The Interstate Agreement on Detainers is a compact which has been adopted by 48 states, the District of Columbia, and the United States,[1] to encourage expeditious and orderly disposition of outstanding criminal charges filed against a person incarcerated in a different jurisdiction. Appellant was transferred from New Jersey to Pennsylvania by authority of Article IV of the IAD.[2] The process begins when the prosecutor files a written notice of the custody request with the sending state. The notice must be approved by a court having jurisdiction to hear the underlying charges. A 30–day waiting period follows, in which the Governor of the sending state may disapprove the request for custody, either upon his own motion or upon motion of the prisoner. After the waiting period has expired the sending state must honor the request and transport the prisoner to the receiving state. IAD, Article IV(a). The receiving state then has 120 days after the prisoner arrives to try him on the charges that form the basis of the detainer, unless a continuance is granted upon good cause shown. IAD, Article IV(c). Finally, Article IV(e), the "anti-shuttling" provision, requires the receiving state to dispose of all pending charges against the prisoner before returning him to the sending state.

■ Appellant claims that the IAD prohibits Pennsylvania from trying him on the robbery charges filed after his return to Pennsylvania. He points to Article V(d) of the IAD, which limits prosecution, after a transfer pursuant to the IAD, to indictments which existed at the time of the transfer and which formed the basis for the detainer as his authority.[3] We agree.

---

1. The IAD, since it has been approved by Congress pursuant to the Compact Clause of the United States Constitution, Art. I, § 10, cl. 3, is a federal law subject to federal rather than state construction. *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985); *Cuyler v. Adams*, 449 U.S. 433, 438, 101 S.Ct. 703, 706, 66 L.Ed.2d 641 (1981). Thus, the federal courts have habeas corpus jurisdiction, pursuant to 28 U.S.C. § 2254, over alleged violations of the IAD. *Casper v. Ryan*, 822 F.2d 1283, 1288 (3d Cir.1987), *cert. denied*, 484 U.S. 1012, 108 S.Ct. 714, 98 L.Ed.2d 664 (1988); *Johnson v. Williams*, 666 F.2d 842, 844 n. 1 (3d Cir.1981).

2. Article IV establishes the procedure by which the prosecutor in the receiving state files a detainer against a defendant incarcerated in another state to compel his presence at trial.

3. Article V(d) provides, in pertinent part:
   The temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations or complaints which form the basis of the detainer or detainers or for prosecution on any other charge or charges arising out of the same transaction.
   Article V(d), 42 Pa.Cons.Stat. § 9101.

Appellant was never tried on the burglary charges which formed the basis of the detainer. Moreover, the Commonwealth concedes that the robbery charges were unrelated to the burglary charges. Thus, the Commonwealth did exactly what is expressly prohibited by Article V(d): It tried appellant on outstanding charges which were unrelated to the charges which formed the basis of the detainer. The question now is whether this defect in the state court proceedings is so fundamental as to warrant granting habeas relief.

## III.

In considering whether habeas relief is available for the Commonwealth's violation of Article V(d), we first observe that " 'collateral relief is not available when all that is shown is a failure to comply with the formal requirements' of a rule of criminal procedure in the absence of any indication that the defendant was prejudiced by the asserted technical error." *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974) (quoting *Hill v. United States,* 368 U.S. 424, 429, 82 S.Ct. 468, 472, 7 L.Ed.2d 417 (1962)). Rather, "the appropriate inquiry [is] whether the claimed error of law [is] 'a fundamental defect which inherently results in a complete miscarriage of justice,' and whether '[i]t ... present[s] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.' " *Id.* (quoting *Hill,* 368 U.S. at 428, 82 S.Ct. at 471).

This court has held that minor, technical violations of the IAD are not sufficient to require granting habeas relief. *Casper v. Ryan,* 822 F.2d 1283, 1290 (3d Cir.1987), *cert. denied,* 484 U.S. 1012, 108 S.Ct. 714, 98 L.Ed.2d 664 (1988). To date, only viola-

tions of the anti-shuttling provision of Article IV(e) have been found by this court to be so "fundamental" as to warrant habeas relief without a showing of prejudice. *United States v. Williams,* 615 F.2d 585 (3d Cir.1980); *United States ex rel. Esola v. Groomes,* 520 F.2d 830 (3d Cir.1975). Among the reasons for finding that a violation of the anti-shuttling provision is a fundamental defect is that the text of Article IV(e) includes a specific remedy for dismissal with prejudice. *Casper,* 822 F.2d at 1290. This court also noted that Article IV(e) furthers the basic goal of the IAD, which is "to prevent transfer back and forth between competing jurisdictions, its theory being that such transfers undermine the right to a speedy trial and the rehabilitative process of the system in which the prisoner is currently serving a sentence." *Williams,* 615 F.2d at 588.[4]

By contrast, Article V(d) does not contain a specific dismissal remedy. More importantly, the goals which the Act was designed to promote are not compromised by the prosecution of appellant on outstanding charges which were not the basis of the detainer. Article V(d) is meant to safeguard the prisoner's right to contest the transfer by appealing to the Governor of the sending state pursuant to Article IV(a) of the IAD. Appellant maintains that although he waived his right to contest the detainer on the burglary charges, he never had the opportunity to contest his transfer on the robbery charges, since they were filed after his arrival in Pennsylvania and were not the basis of the detainer. Nevertheless, his inability to contest transfer on the robbery charges did not prejudice him in such a way as to constitute a "miscarriage of justice." In an analogous situation, this court has held that the failure of

---

**4.** The Court of Appeals for the Eleventh Circuit has recently suggested that *Casper* has undermined the continuing vitality of *Williams. Seymore v. State of Alabama,* 846 F.2d 1355, 1359 n. 7 (11th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 816, 102 L.Ed.2d 806 (1989). We read *Casper* as holding that the test for determining whether a provision of the IAD is so fundamental as to provide for an automatic grant of habeas relief is not based solely on the existence of a sanction of dismissal with prejudice for the

violation of a specific provision. As was noted in *Casper,* "[w]e believe, however, that the mandatory sanction of dismissal was just one of the factors which led the *Williams* court to its decision." 822 F.2d at 1290. Thus, *Casper* only questioned whether the inclusion of a specific sanction of dismissal in the text of the IAD is by itself sufficient to elevate a violation of the Agreement into a fundamental defect mandating habeas relief.

a sending jurisdiction to provide a pre-transfer hearing pursuant to Article IV(a) and the Uniform Criminal Extradition Act did not amount to fundamental defect which would entitle a prisoner to habeas relief. *Shack v. Attorney General of Pennsylvania*, 776 F.2d 1170 (3d Cir.1985), *cert. denied*, 475 U.S. 1030, 106 S.Ct. 1234, 89 L.Ed.2d 342 (1986). In *Shack*, we first noted that, unlike Article IV(e)'s anti-shuttling provision, failure to provide the prisoner a pre-transfer hearing does not warrant the sanction of dismissing the charges against him. Without some indication from Congress that it intended a dismissal for failure to grant a pre-transfer hearing, the *Shack* court concluded that it would not allow "the extraordinary sanction of a collateral attack on an otherwise valid criminal conviction." 776 F.2d at 1173–74. In addition, the court stated that the primary purpose of a pre-transfer hearing is not to determine the guilt of the prisoner, but rather "to assure that the prisoner transferred is the prisoner sought and trial in the receiving state reliably determines whether such is the fact." *Id.*

█ Appellant is able to demonstrate from the plain language of the statute that by trying him on outstanding robbery charges which were not the basis of the detainer, the Commonwealth deprived him

of the opportunity to contest his transfer on those charges before the Governor of New Jersey. Nevertheless, he has not proven that he was prejudiced in any manner by this error. Once appellant was sent to Pennsylvania, the trial court carefully considered the circumstances of his return when it passed on his pretrial motion to dismiss the robbery charges. Appellant cannot claim that he was denied a full and fair opportunity to contest his transfer by the mere fact that it was a Pennsylvania judge rather than the Governor of New Jersey who made the determination.[5]

## IV.

█ Appellant briefly argues that the Commonwealth violated Article IV(c) when it did not try him on the robbery charges within 120 days of his arrival in Pennsylvania. We do not reach this issue. Even if we were to conclude that the 120–day period was applicable, the extraordinary nature of habeas relief requires appellant to make a showing of prejudice. In *Casper v. Ryan, supra,* we held that the 180–day limitation on prisoner-initiated returns pursuant to Article III of the IAD was not of such a fundamental nature as to warrant an automatic grant of habeas relief if violated.[6] 822 F.2d at 1291. Similarly, the

5. The district court erroneously concluded, as did the Superior Court on direct appeal, that Article V(d) was not violated when appellant was tried on the robbery charges. The Superior Court rejected appellant's argument that, pursuant to the IAD, the Commonwealth was required to send him back to New Jersey and file a new detainer based on the robbery charges:

> It would be an unnecessary burden on the penal system to adopt appellant's argument that the Detainers Act requires the authorities to return a prisoner to the sequestering state so that charges outstanding in the requesting state, other than those for which the prisoner was originally extradited, can be brought against him.

*Commonwealth v. Cooney*, 370 Pa.Super. 336, 341, 536 A.2d 433, 436 (1988) *(citation omitted)*. The district court, while essentially agreeing with the Superior Court that Article V(d) did not bar prosecution of the robbery charge, admonished that it "in no manner condones reckless, or even half-hearted, compliance with the Agreement on Detainers Act on the part of the Commonwealth." District Ct.Op. at 6.

Although we hold that appellant is not entitled to relief on his habeas petition, interpreting the IAD so as to allow a receiving jurisdiction to try a defendant on charges which are not the basis of the detainer would encourage sloppiness on the part of the receiving authority. In an Article IV proceeding, where the prisoner is often transferred against his will to another jurisdiction, the receiving jurisdiction would be well advised to determine how many charges are outstanding against the prisoner before detainers are filed. Thus, while it may be an "unreasonable burden" to transfer the prisoner back to the sending state, the Commonwealth could have spared itself of this burden had it been more diligent in coordinating the various charges it wished to bring against appellant before it filed the detainer.

6. Article III of IAD applies when the prisoner initiates the procedure. Under Article III the warden is required to notify the prisoner of all outstanding detainers and to inform him of his right to request final disposition of the criminal charges underlying those detainers. IAD, Arti-

120–day limitation of Article IV(c), while it does contain a remedy of dismissal, is not so fundamental as to warrant an automatic grant of habeas relief without a showing of prejudice.[7] Here, appellant has not alleged that the Commonwealth's failure to try him within 120 days of his arrival denied him a fair trial, nor has he alleged that the actual commencement of his robbery trial, 197 days after he was charged in Pennsylvania, violated his constitutional right to a speedy trial.[8] Because appellant did not allege that the claimed IAD violation "prejudiced his ability to defend at trial or the circumstances of his incarceration", he is not entitled to habeas relief. *Casper*, 822 F.2d at 1290.

For the foregoing reasons, we will affirm the judgment of the district court.

cle III(d). If the prisoner requests final disposition, then the receiving state has to bring him to trial within 180 days of his request for disposition of the charges or dismissal will result, unless the receiving state moves for a continuance. IAD, Article III(a).

7. The *Casper* court, in rejecting "fundamental nature" status for violations of Article III's speedy trial provision, noted that

We cannot view a violation of the anti-shuttling provision, which involves the removal of the prisoner from one jurisdiction, transfer and return without trial, as comparable to the inception of a trial several weeks after required, particularly when the 120–day and 180–day provisions of the IAD themselves allow for an extension of the time for good cause.

822 F.2d at 1290.

8. Appellant couches all of his arguments in terms of whether his due process rights were violated by the Commonwealth's alleged viola-

tion of the IAD. For example, he states that the procedure by which a prisoner may petition the Governor of the sending state "is a due process right granted by the Commonwealth of Pennsylvania and the State of New Jersey as parties to the agreement." Brief for appellant at 12. However, as we noted in *Diggs v. Owens*, 833 F.2d 439, 442 (3d Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1277, 99 L.Ed.2d 488 (1988), a violation of the IAD "is not an infringement of a constitutional right." *See also United States v. Black,* 609 F.2d 1330, 1334 (9th Cir.1979), *cert. denied,* 449 U.S. 847, 101 S.Ct. 132, 66 L.Ed.2d 56 (1980); *Camp v. United States,* 587 F.2d 397, 400 (8th Cir.1978) ("[T]he IAD amounts to nothing more than a statutory set of procedural rules which clearly do not rise to the level of constitutionally guaranteed rights."). Thus, appellant's due process rights are not implicated when he asserts that the Commonwealth violated various provisions of the IAD.