679 A.2d 1284

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**William Ricky BOYD, Appellant.**

Superior Court of Pennsylvania.

Argued May 1, 1996.

Filed June 17, 1996.

Reargument Denied Aug. 22, 1996.

Thomas R. Ceraso, Greensburg, for appellant.

Scott A. Bradley, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before POPOVICH, EAKIN and HESTER, JJ.

POPOVICH, Judge.

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Allegheny County following appellant's conviction on one count of criminal conspiracy,[1] two counts of violating the Uniform Firearms Act[2] and four counts of aggravated assault.[3]  Herein, appellant alleges the following: 1) The trial court erred in denying his motion to dismiss for violation of the Interstate Agreement On Detainers (IAD);[4] 2) The trial court erred in admitting evidence of other crimes because it was so expansive and prejudicial as to invalidate a fair proceeding;  and 3) The trial court erred in sentencing him as it relates to his financial ability to pay the fine imposed.  We affirm.

1.  18 Pa.C.S. § 903.
2.  18 Pa.C.S. § 6101.
3.  18 Pa.C.S. § 2702.
4.  42 Pa.C.S.A. § 9101, *et seq.*

■ The relevant history of this case is as follows: On March 20, 1992, appellant was sentenced in the state of New Jersey to a prison term of five years. On June 8, 1992, the District Attorney of Allegheny County, Pennsylvania requested that arrest warrants for appellant be lodged as a detainer against him. These warrants charged appellant with violating the Uniform Firearms Act and with possession of a controlled substance. Thereafter, on July 8, 1992, the Allegheny County District Attorney's Office received appellant's written request for a final disposition of the charges against him, thereby triggering the provisions of the IAD.[5] On July 28, 1992, appellant was transported to Allegheny County to face the charges against him. Ultimately, these charges were nolle prosed. The firearms charge against appellant was the subject of a subsequent federal prosecution.

While appellant was still in Pennsylvania, on December 28, 1992, he was charged with the offenses at issue in this case, namely, one count of criminal conspiracy, four counts of aggravated assault and one count of violating the Uniforms Firearms Act. These charges were unrelated to the original charges brought against appellant and stemmed from incidents occurring on January 11, 1991, and January 22, 1991, whereby appellant and his co-conspirator shot and injured several men and a child.

Appellant moved to dismiss these new charges, alleging that the IAD was violated. The trial court denied this motion. Following a trial by jury commencing on April 13, 1994, appellant was convicted of all charges. This appeal followed judgment of sentence.

5. Appellant argues that Article III's 180 day time limit began to run on June 25, 1992, when he wrote his request for final disposition. Appellant is mistaken. It is well-settled that under Article III the 180 day period for bringing a prisoner to trial does not begin until the prisoner's request for a disposition of the detainer is actually received by the District Attorney's office which lodged the detainer. *Commonwealth v. Woods*, 444 Pa.Super. 321, 663 A.2d 803 (1995). Here, the District Attorney's office received appellant's written request for disposition on July 8, 1992. Accordingly, the Commonwealth had until January 3, 1993 to bring him to trial on the charges which formed the basis of the detainer.

██ Appellant's first allegation is that the trial court erred in denying his motion to dismiss because the Commonwealth failed to bring him to trial on the new counts filed after he was transported to Pennsylvania within 180 days as was required by Article III of the IAD.[6] We disagree with appellant's argument and find that the 180 day time limit of Article III did not apply to the new counts on which appellant was convicted.

██ Rights under Article III come into being only when "there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner...." 42 Pa. C.S.A. § 9101, Art. III(a). Thus, even an outstanding indictment in another state generates no Article III rights in and of itself; the key is the lodging of a detainer based on that untried indictment. *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). Moreover, Article III(d) provides, in pertinent part, that "[a]ny request for final disposition made by a prisoner ... shall operate as a request for final disposition of all untried indictments, informations, or complaints *on the basis of which detainers have been lodged against the prisoner* from the state to whose prosecuting official the request for final disposition is specifically directed." 42 Pa.C.S.A. § 9101, Art. III(d) (emphasis added).

In conformity with these provisions, Article V(c) provides that "in the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the [180 day] period provided in Article III," that indictment, information, or complaint must be dismissed with prejudice. 42 Pa.C.S.A. § 9101, Art. V(c).

A careful examination of the foregoing provisions reveals that the focus is on the problem of detainers. By their terms, they deal only with indictments, informations, or complaints on the basis of which detainers have been filed. Accordingly, the

6. Appellant does not dispute that those charges which formed the basis of the original detainer were disposed of effectively within the 180 day period required by 42 Pa.C.S.A. § 9101, Art. III.

time provision of Article III applies only to indictments, informations, or complaints on the basis of which detainers have been filed.

Here, there is no dispute that the detainer lodged in Pennsylvania was based on charges which were separate and apart from any new charge on which appellant was convicted. At the time the detainer was lodged, the only "untried indictment, information, or complaint" upon which the detainer could have been based was the complaint on charges unrelated to those at issue here. Accordingly, we find that the 180 day time limit of Article III was inapplicable to the new charges forming the basis of his conviction. Therefore, the fact that appellant was tried on the new charges more than 180 days after the District Attorney's office received his written demand for final disposition of the charges which were the basis of the detainer does not warrant dismissal under Article III.

■ Appellant's next allegation is that the trial court erred in denying his motion to dismiss for violation of the IAD because the Pennsylvania authorities violated Article V(d) when they tried him on the new charges which arose out of the January 1991 shootings after his return to Pennsylvania. While we agree with appellant's allegation, we find that the violation was harmless error.

Article V(a) provides, in pertinent part, as follows:

In response to a request made under Article III or Article IV hereof, the appropriate authority in a sending state shall offer to deliver temporary custody of such prisoner to the appropriate authority in the state where such indictment, information, or complaint is pending against such person in order that speedy and efficient prosecution may be had.

42 Pa.C.S.A. § 9101, Art. V(a).

Article V further provides that "[t]he temporary custody referred to in this agreement shall be *only* for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations, or complaints *which form the basis of the detainer or detainers or for prosecution on any other charge or charges arising out of the*

*same transaction."* 42 Pa.C.S.A. § 9101, Art. V(d) (emphasis added). In addition, Article V provides that "[a]t the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending State." 42 Pa.C.S.A. § 9101, Art. V(e).

In *Cooney v. Fulcomer,* 886 F.2d 41 (3rd Cir.1989), the Third Circuit of the United States Court of Appeals held that Pennsylvania authorities violated the IAD when they tried the appellant on robbery charges filed after his arrival in Pennsylvania and which were not the basis of the detainer. The court further held that Article V(d) "limits prosecution after a transfer pursuant to the IAD, to indictments, which existed at the time of transfer and which formed the basis for the detainer...." *Cooney,* 886 F.2d at 43. Nevertheless, the Commonwealth argues that *Cooney* is distinguishable from this case because in *Cooney* the prisoner was transported to Pennsylvania pursuant to Article IV whereby the *prosecutor* filed the written notice of the custody request to the sending state. Here, the Commonwealth argues, *appellant* filed the written notice demanding final disposition of the charges against him pursuant to Article III, and, accordingly, *Cooney* is inapplicable. We disagree.

The express language of Article V(a) reveals that Article V(d), which limits prosecution after a transfer to indictments which formed the basis of the detainer, is applicable to temporary custody of the prisoner pursuant to Article IV and Article III. 42 Pa.C.S.A. § 9101, Art. V(a). Accordingly, the reasoning in *Cooney* is applicable in this case.[7]

Here, Pennsylvania had temporary custody of appellant pursuant to Article III. As in *Cooney,* appellant was never tried on the original charges which formed the basis of the detainer. Moreover, the Commonwealth concedes that the original charges were unrelated to the new charges upon which appellant was convicted. "Thus, the Commonwealth did exactly what is expressly prohibited by Article V(d): It tried

7. We note that since the IAD is subject to federal construction, we are bound by the Third Circuit's interpretation of the IAD in *Cooney. Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962).

appellant on outstanding charges which were unrelated to the charges which formed the basis of the detainer." *Cooney*, 886 F.2d at 43. The government was obligated to return appellant to New Jersey once it had dismissed the charges upon which the detainer was based. The question now is whether the Commonwealth's failure to return appellant to New Jersey warrants reversal.

If the Commonwealth violates the 180 day time limit of Article III, or if the Commonwealth violates the 120 day time limit of Article IV, the IAD expressly provides for dismissal of the charges with prejudice. However, Article V(d) does not contain a specific dismissal remedy. Therefore, we conclude that violation of Article V(d) is a cause for reversal only if it can be shown to have caused actual prejudice to appellant.[8] *See Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

We are unable to perceive that appellant has suffered any prejudice through his conviction on the new counts without having been returned to New Jersey. It is undisputed that had the Commonwealth delivered appellant back to New Jersey after nolle prossing the charges on which the detainer was based, it could have forthwith sought his return to Pennsylvania under a new detainer and a concomitant request under Article IV of the IAD. In addition, appellant has not alleged that his constitutional right to a speedy trial was violated or that he was denied a fair trial. *See Cooney, supra.* In fact, appellant acknowledges that he was not prejudiced by the Commonwealth's failure to return him to New Jersey after the original charges were nolle prossed. However, he argues that he should be granted the benefit of the Article IV time limit because he was held in the receiving state in violation of Article V. Essentially, he argues that a prisoner who is held in a receiving state in violation of Article V retains his speedy

---

**8.** In *Cooney*, the Third Circuit recognized the relevance of an investigation of the prejudice suffered by an appellant as a result of the failure to comply with Article V. The Third Circuit applied the standard used in habeas corpus petitions and found no "manifest injustice" to have been suffered by appellant. Since we are dealing with a direct appeal in this case, we must apply the *Kotteakos* test.

trial rights as if he were in the state involuntarily under an Article IV request. After a careful examination of the IAD, we find no support for appellant's contention. We think that this presses the concept of Article IV rights too far in the face of a statutory scheme which makes no provision for such a sanction. Accordingly, the time limits of Pennsylvania Rule of Criminal Procedure 1100 governed in this case.[9]

Appellant's next allegation is that the trial court erred in admitting evidence of other crimes because it was so expansive and prejudicial as to invalidate a fair proceeding. Specifically, appellant argues that the lower court erred in admitting evidence relating to 1) "owe sheets," which were lists maintained by appellant and Bell of individuals who owed appellant money for drugs; 2) notations of the beeper codes assigned to various individuals in appellant's "gang," 3) gunshots which were fired at George Hilliard's apartment on December 30, 1990, and 4) photos of various individuals, including photos of appellant and other men standing together at the State Correctional Institute at Pittsburgh. We find that this issue has been waived on appeal.

In order to preserve for appellate review any claim of error regarding the admission of evidence, a party must specifically object to the admission of such evidence at trial. *See Commonwealth v. Garcia,* 443 Pa.Super. 414, 661 A.2d 1388 (1995). Failure to do so results in a waiver of that claim of error in the evidence's admission. *Id.* The appellant is further "required to set forth in both the statement of the case and in the argument of the appellate brief reference to the place in the record where the issue presented for decision on appeal has been raised or preserved below." *Painter v. Pennsylvania Electric Company,* 368 Pa.Super. 334, 534 A.2d 110, 111 (1987).

Here, appellant has failed to set forth the place in the record where the evidence was introduced, where any alleged

9. We note that appellant has expressly argued that Rule 1100 was inapplicable to this case, and, therefore, failed to develop any argument concerning its applicability. Accordingly, we find that his conviction was not hampered by Rule 1100's application.

objections were made, or where any alleged curative instructions were given by the court. As this was an extremely lengthy and complicated trial consisting of ten days of testimony and argument, during which forty-four witnesses testified producing a 1,300 page trial record, appellant's failure to comply with the rules impedes our ability to review the issue, and, accordingly, we will not address its merits on appeal.

Appellant's final contention is that the trial court erred in sentencing him as it relates to his financial ability to pay the $100,000 fine which was imposed. Specifically, appellant argues that the lower court erred in determining that he is or will be able to pay the fine. We find that appellant also has waived this issue on appeal.

> The lower court may, in its discretion, consider a fine as an additional or an exclusive sanction. The court may impose a fine as an additional penalty when the defendant has derived a pecuniary gain from the crime or when a fine would be particularly appropriate as a deterrent. 'In determining the amount and method of payment of a fine, the court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose.' However, '[t]he court *shall not* sentence a defendant to pay a fine *unless it appears of record* that: (1) the defendant is or will be able to pay the fine. . . .'

*Commonwealth v. Mead,* 300 Pa.Super. 510, 446 A.2d 971, 973 (1982) (citations omitted) (emphasis in original).

Here, the sentencing transcript clearly reveals that prior to imposing the $100,000 fine, the lower court inquired as to appellant's ability to pay the fine imposed. However, we are unable to determine whether the lower court had sufficient information available to conclude that appellant had or will have the financial ability to pay the fine. From the sentencing transcript and the lower court's opinion, it is clear that the court primarily relied upon the presentence report in affixing appellant's fine at $100,000. The presentence report was not made a part of the official record. It is black letter law in this jurisdiction that an appellate court cannot consider

anything which is not a part of the record in the case. *Commonwealth v. Young*, 456 Pa. 102, 317 A.2d 258 (1974). It is also well-settled in this jurisdiction that it is appellant's responsibility to supply this Court with a *complete* record for purposes of review. *Id.* (emphasis added). "A failure by appellant to insure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes waiver of the issue sought to be examined." *Smith v. Smith*, 431 Pa.Super. 588, 637 A.2d 622, 623 (1993).

Here, the aforementioned rules translate into our inability to determine whether the lower court abused its discretion in determining that appellant had or will have the financial ability to pay a $100,000 fine. In his brief, appellant specifically claims that "[t]he presentence report made no findings that would have led the court to believe that the defendant had the capacity to pay any fine...." Appellant's Brief p. 30. Without the presentence report, we are unable to review this claim, and, accordingly, we conclude that appellant has waived this issue on appeal.

For all of the foregoing reasons, we affirm the lower court's judgment of sentence.

Affirmed.