J-S45036-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
          :        PENNSYLVANIA
          :
        v.          :
          :
          :
          :
JORGE LUIS SANTIAGO        :
          :
      Appellant     :   No. 827 MDA 2025

Appeal from the Judgment of Sentence Entered May 21, 2025
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0000137-2023

BEFORE:   STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED APRIL 21, 2026**

Appellant, Jorge Luis Santiago, appeals from the judgment of sentence imposed by the Court of Common Pleas of Lancaster County after a jury found him guilty of fleeing or attempting to elude a police officer[1] and the trial court found him guilty of summary traffic offenses for failure to stop at a red light and disregarding duties at stop signs.[2]  His counsel has filed a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), along with a petition to withdraw as counsel.  Upon review, we affirm and grant counsel's request to withdraw from representation.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. § 3733(a).

[2] 75 Pa.C.S. §§ 3112(a)(3)(i) and 3323(b).

At about 12:58 p.m. on December 1, 2022, Detective Adam Flurry of the Lancaster City Bureau of Police was in an unmarked car on Filbert Street in Lancaster along with Detective Gary Lowe in the passenger seat, as the detectives approached a stop sign at an intersection with High Street. *See* N.T. Trial, 3/10/25, 107-08. A white Dodge Charger crossed the intersection before them on High Street. *See id.* at 108-09, 111. From a distance of fifteen to twenty feet, Detective Flurry could see that Appellant was the driver of the Charger and that there were other people in the front passenger and rear seats.[3] *See id.* at 112, 116, 149. Detective Flurry was familiar with Appellant, and knew that other officers had been looking for him in connection with a car chase incident in August of 2022. *See id.* at 113, 149-50. Detective Flurry had also seen photographs and video footage of Appellant dating back to 2014 or 2015 and knew that Appellant could be recognized by his neck and face tattoos and his "extremely distinctive" facial bone structure. *Id.* at 114-15. Detective Flurry followed the Charger and requested backup officers' assistance to initiate a car stop. *See id.* at 117.

The backup officers, Officers Eliud Tirado and Steven Alexander, pulled up around Detective Flurry's car on Harrisburg Pike in separate marked police cars and attempted to stop the Charger but Appellant accelerated quickly and cut through a shopping complex. *See* N.T. Trial, 3/10/25, 123-24, 159-62,

_____

[3] Detective Flurry confirmed that there was no window tint on that car. *See* N.T. Trial, 3/10/25, 156.

184-88. As the marked patrol cars pursued the Charger through the parking lot, Detective Flurry drove around to the exit on the other side of the lot, but the Charger exited the parking lot and continued toward Manheim Pike. *See id.* at 124, 166. Detective Flurry joined the pursuit behind multiple marked police cars following the Charger, but all the officers soon thereafter lost sight of the car. *See id.* at 125, 189. Before the officers lost track of the Charger, Lieutenant Charles Laser, who also joined the pursuit in an unmarked car with lights and sirens, saw the Charger overtake or pass a car that was stopped at a stop sign on Marshall Avenue, disregard stop signs on Reservoir Street, Walnut Street, and Chestnut Street, and disregard two red traffic lights at intersections with Chestnut Street and King Street. *See* N.T. Trial, 3/11/25, 217, 219-21.

Fifteen to twenty minutes after the Charger escaped from view, Lieutenant Bill Hickey found it, then unoccupied, near the intersection of Delaware Street and Stevens Avenue in southeast Lancaster. *See* N.T. Trial, 3/10/25, 129, 155, 191; N.T. Trial, 3/11/25, 225-26. The car was owned by and registered to Chiela E. Santiago (no apparent familial relation to Appellant). *See id.* at 130, 152; N.T. Trial, 3/11/25, 280, 282. The police towed the car away. *See* N.T. Trial, 3/11/25, 232. Subsequently, digital scales were found in the center console. *See id.* The police arrested Appellant on December 15, 2022. *See id.* at 257.

Detective Flurry later retrieved Appellant's cellular telephone and extracted data from it. *See* N.T. Trial, 3/11/25, 235. The data from the phone

indicated that it had a Bluetooth connection with a Dodge motor vehicle at 1:10 p.m. on December 1, 2022, during the police pursuit at issue, and first had a "handshake" connection with that same car at 9:35 p.m. on November 25, 2022. *See id.* at 239.

Appellant's phone data also included text messages exchanged with the phone of a person named Luis Rivera, whose contact was labeled as "Lil Bro" in Appellant's phone. N.T. Trial, 3/11/25, 240. A text message from Rivera's phone to Appellant's phone at 12:03 p.m. on December 1, 2022, asked, "Grab me after you see OG?" *Id.* at 241. After a separate message, Rivera's phone texted a location in Lancaster which was one block away from where Detective Flurry first saw the Dodge Charger that day. *See id.* at 242. At 12:14 p.m., a text was sent from Appellant's phone to Rivera's phone that stated, "Come out." *Id.* at 242.

In further communications the next day between 12:15-12:16 p.m., Rivera's phone was used to text Appellant's phone, "Bro, I can't be out here without you" and "I'm already fucked up stamp," to which the reply sent from Appellant's phone read, "I'm not going to leave you, bro." N.T. Trial, 3/11/25, 243. A text sent from Appellant's phone to Rivera's at 12:17 p.m. added, "I'm just mad bro. Like how, bro." *Id.* At 12:21 p.m., a text sent from Rivera's phone replied, "[B]ro, I don't know. All I can think is we probably got caught on camera getting out [the] car, bro. Like I'm real, I know my BM … ain't tell." *Id.* at 243-44. At 12:41 p.m., there was a response sent from Appellant's phone: "IDK [('I don't know')], bro." *Id.* at 244.

Appellant's phone data also contained a video voicemail message from around 1:10 p.m. on December 1, 2022, that was from a contact saved in the phone as "Breezy." **See** N.T. Trial, 3/11/25, 244-45. Three different voices could be heard in the voicemail message. **See id.** at 245. Detective Flurry recognized the one voice was Luis Rivera's. **See id.** He believed with less than "100 percent certainty" that a second voice was that of Quindon Hill, and he believed, based on the evidence surrounding the case, that the third voice was Appellant's. **Id.** at 245, 248-49, 259-60. Detective Flurry confirmed at trial that the voicemail "would have been from" the police pursuit incident on December 1, 2022. **Id.** at 246.

Appellant proceeded to a jury trial on March 10-11, 2025. The Commonwealth presented testimony from Detective Flurry and Officers Alexander, Tirado, and Laser. The Commonwealth's trial exhibits included: a photograph of the intersection of Filbert and High Streets; a map of Lancaster City with markings reflecting the path of the police pursuit; photographs of Appellant and Luis Rivera; copies of the text messages that were extracted from Appellant's phone and addressed in trial testimony; a disc containing a police motor vehicle recording from the pursuit, related police body camera footage, and the voicemail recording from the "Breezy" contact; and a printout reflecting the Bluetooth connection between Appellant's phone and a Dodge motor vehicle.

Appellant presented testimony from Luis Rivera.[4]  Rivera acknowledged that he had been friends with Appellant for more than ten years.  *See* N.T. Trial, 3/11/25, 286.  He agreed that he was in a white Dodge Charger on the day in question and that there was a pursuit with the police.  *See id.* at 287.  Rivera asserted that Appellant came to pick him up on High Street, driving a white Charger, but that Rivera took over the driving and stated that he drove Appellant to pick up Hill.  *See id.* at 288-89.  He agreed that he did not have a valid driver's license at that time.  *See id.* at 289.  He explained that he was the driver who fled "because [his] friend Q [(Hill)] was on the run from state parole," he did not have a driver's license, and he wanted to avoid a violation of the probation term that he was then serving.  *Id.* at 290, 323.  Additionally, he alleged that he told the mother of his child in Instagram messages that he "got in a chase" at high-speed with the police and that he was with "Q and Santiago."  *Id.* at 292-93.  He also sent her a message after the pursuit saying, "I'm done driving because the feds [are] on us," referring to the police as the "feds."  *Id.* at 295.  Finally, Rivera asserted, on cross-examination, that he, Appellant, and Hill "all had a COVID mask on" their faces on the day of the pursuit.  *Id.* at 315-16.

---

[4] At the time of his testimony, Rivera was incarcerated in state prison serving a minimum of four or five years' imprisonment.  *See* N.T. Trial, 3/11/25, 299.  He acknowledged that he had previously lied to a grand jury and had a criminal history that included a burglary adjudication.  *See id.* at 301.  He also agreed that this case was not "the first time that [he] tried to take responsibility for something that [Appellant] was involved with" or the first time he had ever testified on Appellant's behalf.  *Id.* at 301-02.

In bifurcated proceedings, the jury found Appellant guilty of fleeing or attempting to elude a police officer and the court found him guilty of the above-referenced summary traffic offenses. *See* Verdict Sheet, 3/11/25, 1; N.T. Trial, 3/11/25, 401, 405-06. Sentencing was deferred for the preparation of a pre-sentence investigation report. *See* N.T. Trial, 3/11/25, 403. On May 21, 2025, the trial court sentenced Appellant to two to seven years' imprisonment for the fleeing conviction and assessed him twenty-five-dollar fines for each of the summary traffic violations.[5] *See* Order (Sentencing), 5/21/25, 1-2; N.T. Sentencing Hearing, 5/21/25, 14-15.

Appellant timely filed a *pro se* notice of appeal via mail post-marked on June 20, 2025. *See Pro Se* Notice of Appeal, 6/23/25; *see also* Pa.R.A.P. 121(f) ("pro se filing submitted by a person incarcerated in a correctional facility is deemed filed as of the date of the prison postmark or the date the filing was delivered to the prison authorities for purposes of mailing as documented by a properly executed prisoner cash slip"); Pa.R.A.P. 903(a) (general rule proscribing a thirty-day deadline for filing an appeal). In

---

[5] The imprisonment term was at the bottom of the standard range recommended by the Sentencing Guidelines: twenty-four to thirty-six months' imprisonment, plus or minus three months for aggravating or mitigating circumstances. *See* N.T. Trial, 3/11/25, 396 (referring to Appellant's prior record score as a "RFEL"); N.T. Sentencing Hearing, 5/21/25, 3 (identifying the applicable guideline range); Guideline Sentence Form, 5/25/25, 1; *see also* 204 Pa. Code § 303.15 (7th ed., amend. 6) (designating an offense gravity score of five for a 75 Pa.C.S. § 3733(a) conviction as a felony of the third degree); 204 Pa. Code § 303.16(a) (7th ed., amend. 6) (applicable basic sentencing matrix).

response to an order directing the filing of a statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Appellant's counsel filed a statement of intent to withdraw pursuant to *Anders*. *See* Order (Rule 1925(b)), 7/23/25, 1; Statement of Intent to File an *Anders* Brief, 7/31/25, 1-2. The trial court has prepared an opinion for our review. *See* Trial Court Opinion, 8/28/25, 1-5.

Counsel's *Anders* brief presents the following question for our review:

> Whether the trial court erred admitting cellular phone records from Appellant's phone that were only given to trial counsel immediately prior to trial[?]

*Anders* Brief, 5 (unnecessary capitalization and suggested answer omitted).

As a preliminary matter, "we must first consider counsel's petition to withdraw from representation." *Commonwealth v. Watts*, 283 A.3d 1252, 1254 (Pa. Super. 2022). Counsel who believes an appeal is frivolous and seeks to withdraw from representation under *Anders* must:

> (1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) furnish a copy of the *Anders* brief to the appellant; and (3) advise the appellant that he or she has the right to retain private counsel or raise additional arguments that the appellant deems worthy of the court's attention.

*Commonwealth v. Gabra*, 336 A.3d 1052, 1056 (Pa. Super. 2025) (citation omitted; some parentheses added). In *Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009), our Supreme Court set forth clear standards for the content of the *Anders* brief, requiring that the brief:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. Once counsel has satisfied the *Anders* requirements, this Court has a duty to conduct its own review of the trial court's proceedings and make an independent determination whether the appeal is wholly frivolous. *See Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

Upon our review, we conclude that counsel has complied with the *Anders* standard for withdrawal. Counsel has filed a brief providing a summary of the case including the procedural history and facts of the case with citations to the trial notes of testimony. The brief cogently addresses a legal issue of whether the trial court erred by admitting Appellant's cellular telephone records based on a late proffer of the records by the Commonwealth and supports the discussion of that claim with references to the trial record and supporting law. *See Anders* Brief, 9-15. Counsel also explains that a hypothetical challenge to the admission of that evidence would be waived for lack of preservation by an objection raised before the trial court. *See id.* at 13. Moreover, counsel has filed a petition to withdraw from representation with an appended letter to Appellant, enclosing a copy of the *Anders* brief and the withdrawal petition to Appellant and advising him of, *inter alia*, his

right to file a response or supplement to the brief, either acting *pro se* or with the assistance of newly retained counsel. **See** Counsel's Correspondence to Appellant, 10/8/25, 1 (attached as Exhibit A to Petition to Withdraw as Counsel, 10/8/25). Our docket does not reveal any subsequent response filed by Appellant. As counsel has fully complied with the mandated procedures for withdrawing from representation, we may proceed with substantive review.

In the lone issue identified for review, Appellant's counsel addresses the viability of a claim challenging the trial court's admission of the contents of the data extraction from Appellant's cellular telephone. We review evidentiary rulings for an abuse of discretion. **See Commonwealth v. Yale**, 249 A.3d 1001, 1007 (Pa. 2021). Accordingly, there must be a related discretionary ruling for us to assess for an abuse. "In order to preserve for appellate review any claim of error regarding the admission of evidence, a party must specially object to the admission of such evidence at trial. Failure to do so results in a waiver of that claim of error in the evidence's admission." **Commonwealth v. Boyd**, 679 A.2d 1284, 1289 (Pa. Super. 1996) (citations omitted).

After jury selection was completed, trial counsel discussed with the court that his anticipated strategy would need to account for text messages that he "just got" from the Commonwealth. N.T. Trial, 3/10/25, 77; **see, e.g.**, **id.** at 80 ("That's why I wish I had this two years ago because we could have talked about this. Now I'm flying by the seat of my pants here [where my client now has to testify] at a trial when our strategy was he wasn't going to testify."). Trial counsel noted that there were hundreds of those messages and that he

needed "to figure out how [he was] going to get th[em] printed out." *Id.* To the extent that there was a reason for the delayed production of the text messages or any other information from Appellant's telephone, that was not discussed on the record. Appellant's counsel did not raise an objection to the admission of the text messages or other contents of Appellant's phone based on the late production but instead noted his "uneasiness" and asked for some accommodation for time to review the text messages:

> [Trial Counsel]: Again, Judge, I've been doing this long enough that I can handle something like this, but it's the uneasiness that I feel now because I have to look at dozens and dozens of text messages and figure out what's relevant now.
>
> Because if I miss something -- and I'm going to give [Appellant] this whole thing at some point. And we're back here two years later because I'm ineffective for some reason. That was what I was trying to avoid.
>
> My suggestion is -- and Your Honor, this is your courtroom, I['ll] do whatever you want me to do. I don't want to waste the [c]ourt's time or anybody's time.
>
> I was going to suggest this morning, if I could have the evening to look at this and we could start tomorrow, that way I have eight, 10 hours, 12 hours to review everything, print things out and go from there.
>
> I think I can handle it today, but I still feel that uneasiness that I may miss something in all these text messages.

N.T. Trial, 3/10/25, 88.

The trial court did not immediately issue a ruling on that continuance request and instead asked the prosecutor about whether he expected to have his case-in-chief concluded that day. *See* N.T. Trial, 3/10/25, 89. The

- 11 -

prosecutor explained that the Commonwealth's case would not be completed by then and suggested that Detective Flurry could be recalled to the witness stand on the second day of trial at which point the text messages would be admitted after which Appellant's counsel could have the evening he wanted to review the text messages. *See id.* at 89. Instead of raising an objection or making any additional request for a continuance, Appellant's trial counsel accepted that accommodation. *See id.* (Appellant's trial counsel: "And that's fine, Judge."). The court remarked that it was not trying to be unreasonable with counsel and trial counsel remarked that that was not the case and said, "I appreciate that, but it's just the timing aspect. I wish I had more time." *Id.*

Our review of the record fails to uncover any subsequent exchange bearing on trial counsel's opportunity and ability to "handle" the belated review of the proffered text messages. Trial proceeded as the parties discussed during which the text messages in question were marked and moved into the trial record without any objection. *See* N.T. Trial, 3/11/25, 240-41 (text messages exhibit marked as Exhibit 6 without objection); *id.* at 283-84 (Exhibit 6 moved into record without objection). Consistent with present counsel's review in the *Anders* brief, we must find that any challenge to the admission of the evidence obtained from Appellant's cellular telephone was waived before the trial court and is unreviewable in this direct appeal. *See Commonwealth v. Douglas*, 346 A.3d 825, 834 (Pa. Super. 2025) (noting that Douglas waived his claim challenging the admission of a lab report

addressing the testing of his blood sample that was collected after his arrest for driving under the influence where he did not object at trial to the introduction of the report). Furthermore, after conducting a full examination of all of the proceedings as required, we discern no non-frivolous issues to be raised on appeal. We therefore grant counsel's petition to withdraw as counsel and affirm Appellant's judgment of sentence.

Petition to withdraw as counsel granted. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/21/2026